JONES ET AL., APPELLANTS, *v.* VIP DEVELOPMENT COMPANY, APPELLEE.
GAINS, EXECUTRIX, APPELLANT, *v.* CITY OF PAINESVILLE, APPELLEE.
HAMLIN ET AL., APPELLANTS AND CROSS-APPELLEES, *v.*
SNOW METAL PRODUCTS, APPELLEE AND CROSS-APPELLANT.

[Cite as Jones *v.* VIP Development Co. (1984), 15 Ohio St. 3d 90.]

(Nos. 84-139, 84-339 and 84-409—Decided December 31, 1984.)

*Messrs. Kelley, Grossheim & Bavely* and *Mr. E. Ronald Grossheim,* for appellants in case No. 84-139.

*Messrs. Knepper, White, Arter & Hadden, Mr. Roger L. Sabo* and *Ms. Judith E. Trail,* for appellee in case No. 84-139.

*Davis & Young Co., L.P.A., Mr. Paul D. Eklund* and *Mr. Robert Gregor,* for appellant in case No. 84-339.

*Cannon, Stern, Aveni & Krivok Co., L.P.A.,* and *Mr. Charles E. Cannon,* for appellee in case No. 84-339.

*Jeffries & Monteleone Co., L.P.A., Mr. J. Michael Monteleone* and *Mr. David Forrest,* for appellants and cross-appellees in case No. 84-409.

*Mansour, Gavin, Gerlack & Manos* and *Mr. Eli Manos,* for appellee in case No. 84-409.

*Messrs. Squire, Sanders & Dempsey, Mr. Robert H. Gillespy, Mr. Frank J. Pokorny, Mr. Preston J. Garvin* and *Ms. Maria J. Codinach,* urging affirmance for *amici curiae* Ohio Chamber of Commerce et al. in case Nos. 84-339 and 84-409.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Russell P. Herrold, Jr.,* and *Mr. Robert A. Minor,* urging affirmance for *amicus curiae* Ohio Manufacturers' Association in case Nos. 84-339 and 84-409.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Robin R. Obetz* and *Mr. Bruce L. Ingram,* urging affirmance for *amicus curiae* Ohio Self-Insurers Association.

*Mr. Jerald D. Harris,* urging reversal for *amicus curiae* Ohio Academy of Trial Lawyers in case No. 84-409.

*Jaffy, Livorno, Kaufmann & Arnett Co., L.P.A., Mr. Stewart R. Jaffy* and *Mr. Henry A. Arnett,* urging reversal for *amici curiae* Ohio AFL-CIO and Ohio State UAW-CAP in case Nos. 84-339 and 84-409.

*Murray & Murray Co., L.P.A., Mr. W. Patrick Murray* and *Mr. Kirk J. Delli Bovi,* urging reversal for *amicus curiae* Carl Viock in case No. 84-409.

CLIFFORD F. BROWN, J.

I

The first issue presented by these appeals concerns the definition of the term "intentional tort." Each of the three causes under consideration today involves complaints which allege, or attempt to allege, an intentional wrongful act. Because plaintiffs are suing their employers, their success or failure in alleging and proving the requisite intent is critical to their recovery, given this court's ruling in *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504].

In *Blankenship,* we held that neither Section 35, Article II of the Ohio Constitution[1] nor R.C. 4123.74[2] precludes an employee from seeking damages at common law against his employer for an intentional tort. But where the injury suffered at the workplace is not intentionally inflicted the employee's sole avenue of recovery is through the workers' compensation system. Our task today is to examine the concept of intent for purposes of clarifying what constitutes an intentional tort. More specifically, we propose to determine whether conduct which lacks a specific intent to injure can properly be termed intentional. For the following reasons, we believe it can.

"The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way the law forbids. * * *" Prosser & Keeton, Law of Torts (5 Ed. 1984) 36, Section 8. However, "intent is broader than a desire or purpose to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain

---

[1] Section 35, Article II of the Ohio Constitution reads in pertinent part:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease. * * *"

[2] R.C. 4123.74 provides:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation directly to his injured employees or the dependents of his killed employees, whether or not such injury, occupational disease, bodily condition, or death is compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."

to follow from what the actor does. * * *" *Id.* at 35. See, also, *Payne* v. *Vance* (1921), 103 Ohio St. 59, 69.

Thus, a specific intent to injure is not an essential element of an intentional tort where the actor proceeds despite a perceived threat of harm to others which is *substantially certain,* not merely likely, to occur. It is this element of substantial certainty which distinguishes a merely negligent act from intentionally tortious conduct. Where a defendant acts despite his knowledge that the risk is appreciable, his conduct is negligent. Where the risk is great, his actions may be characterized as reckless or wanton, but not intentional. The actor must know or believe that harm is a substantially certain consequence of his act before intent to injure will be inferred. The existence of this knowledge or intent on the part of the actor may be inferred from his conduct and surrounding circumstances. *Davis* v. *Tunison* (1959), 168 Ohio St. 471 [7 O.O.2d 296], paragraph two of the syllabus.

Thus, an intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur. See 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A.[3] We hereby reject the proposition that a specific intent to injure is necessary to a finding of intentional misconduct.

With these principles in mind, we must now determine whether the courts below correctly disposed of the three instant causes.

Case No. 84-139: *Jones et al.* v. *VIP Development Co.*

In the above-entitled case, the causes of both plaintiffs were dismissed by means of summary judgment. It follows that the trial court found that plaintiffs had failed to raise any genuine issue of material fact, and that defendants were entitled to judgment as a matter of law. See Civ. R. 56(C). For the following reasons, this constituted reversible error.

The complaints of both plaintiffs against defendant VIP aver that VIP "knew, or should have known, that employees and other frequenters would be on the premises for the purpose of pursuing its business activity as a land developer, and would be in close proximity to high voltage electric lines; however, VIP took no steps to inspect, and make safe the premises, nor to warn frequenters of the dangers to be encountered from the high voltage distribution lines on the premises."

We are persuaded that plaintiffs' complaints constitute a sufficient allegation of intentional misconduct to allow them to proceed with their suit under *Blankenship.* This is supported by a review of the complaint in that case, which obviously was considered to have alleged an intentional tort. The *Blankenship* pleading averred that the defendant employer

---

[3] 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A reads:

"The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it."

"failed to correct said [dangerous] conditions, failed to warn * * * employees of the dangers and conditions that existed * * *," despite their knowledge of such conditions. *Id.* at 609. Although the instant complaints, unlike the one in *Blankenship*, do not employ the terms "intentional" or "willful," the absence of these passwords is not dispositive. Nor is the use of the word "negligence" fatal, where the conduct described actually constitutes an intentional tort. Since the allegations are substantially similar to those in *Blankenship*, we find that summary judgment against plaintiffs was unjustified. Where the facts alleged are such that reasonable minds could differ as to whether the defendant's conduct was intentional, a jury question is created which ordinarily may not be resolved by summary judgment. *Cascone* v. *Herb Kay Co.* (1983), 6 Ohio St. 3d 155, paragraph two of the syllabus. Therefore, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings in accordance with this opinion.

Case No. 84-339: *Gains* v. *City of Painesville*

The court of appeals in this cause held that since plaintiff failed to demonstrate a specific intent to injure, the verdict in her favor must be reversed. However, as explained above, no such showing is required. Plaintiff must merely demonstrate that the defendant employer removed the safety cover from the discharge chute despite a belief that injury was substantially certain to result. For the following reasons, we hold that plaintiff sustained her burden in this regard, and reverse accordingly.

Plaintiff's complaint alleged that the defendant employer "intentionally, maliciously, willfully and wantonly" removed the safety cover from the discharge chute, thereby proximately causing the decedent's death. There was evidence to the effect that the employer knew that the cover was intended to protect employees from exactly the kind of injury that the decedent suffered, that the degree of risk posed to employees by the removal of the cover was extremely high, and that no warnings were issued to employees concerning this risk.

Under our analysis above, this conduct may be characterized as an intentional tort. A defendant who fails to warn of a known defect or hazard which poses a grave threat of injury may reasonably be considered to have acted despite a belief that harm is substantially certain to occur. The evidence adduced below supports a finding that the defendant employer knew the removal of the cover posed a substantial risk to its employees. Judgments supported by competent, credible evidence going to all the essential elements of the cause will not be reversed as being against the manifest weight of the evidence. *C. E. Morris* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], syllabus. A reviewing court should be particularly loath to disturb a jury's findings on an issue, such as intent, which is so intimately bound to the interpretation of facts and the demeanor of witnesses. We therefore conclude that the court of appeals

erred in overturning the jury verdict and entering final judgment for the defendant.

In her cross-appeal in the court below, and in this court, plaintiff argues that it was error for the trial court to deny her leave to amend her complaint to allege damages under amendments to the Wrongful Death Act embodied within R.C. 2125.01 *et seq.* We agree. The trial court denied leave to amend on the basis that these amendments, which became effective on February 5, 1982, are to be applied prospectively rather than retrospectively. In so holding, the trial court relied on this court's reasoning in *Straub* v. *Voss* (1982), 1 Ohio St. 3d 182, and *Viers* v. *Dunlap* (1982), 1 Ohio St. 3d 173.

Both of these cases have since been overruled in *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100. Moreover, this court has recently held that the amendment to R.C. 2125.02, which deals with damages in wrongful death actions, is remedial in nature and applies to all such actions tried on or after February 5, 1982, the date the statute became effective. *French* v. *Dwiggins* (1984), 9 Ohio St. 3d 32, syllabus. Thus, it was error to deny plaintiff the opportunity to prove damages under the amended version of this statute, since the instant cause was tried in October 1982.

Based on the foregoing, we reverse the judgment of the court of appeals, and remand this cause for retrial on the issue of damages only. However, the proceedings must be limited to a determination of what, if any, additional damages plaintiff is entitled to under the new Wrongful Death Act. Plaintiff claims no error with regard to the damages already litigated, *i.e.*, for pain and suffering, medical expenses, the pecuniary loss suffered by the decedent's family, and reasonable funeral expenses. These awards must remain undisturbed.

Case No. 84-409: *Hamlin et al.* v. *Snow Metal Products*

In this case, the court of appeals ruled that a directed verdict should have been granted in favor of the defendant Snow Metal Products, and therefore reversed the jury verdict for plaintiffs and entered final judgment for the defendant. The court reasoned that there was no evidence that defendant had committed an intentional tort. We disagree.

Evidence was presented to the jury which, if believed by them, showed that the defendant was aware of the dangers of working with the chemicals in question, that the defendant was also cognizant of health hazards posed by the acid fumes which defendant knew were being recirculated into the workplace, and that the defendant nevertheless continued to assure its employees that their working environment was safe. Such conduct certainly falls within the parameters of intentional wrongdoing, particularly given the added feature of actively misrepresenting the degree of danger to employees, thereby prolonging their exposure to the risk.

It is true that the evidence on several points was conflicting. However,

it is the province of the jury, not of a reviewing court, to resolve the conflict.

We further hold that it was error for the court of appeals to reverse the jury's award of punitive damages to plaintiffs on the basis that no adequate basis existed therefor. There was testimony, which the jury apparently believed, that certain of defendant's management personnel responded to the employees' reports of health problems with lascivious, sexist, and grossly insulting remarks. This court has held that punitive damages may be imposed in tort cases involving insult or malice. *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178, 183 [71 O.O.2d 174]. The punitive portion of the award in this case is therefore reinstated.

Further, defendant is not entitled to a reduction of plaintiffs' judgment by the amount plaintiffs received from defendant's suppliers in exchange for a covenant not to sue. R.C. 2307.31(A) provides that "[t]here is no right of contribution in favor of any tortfeasor who has intentionally caused or intentionally contributed to * * * [an] injury or wrongful death." Although R.C. 2307.32(F)[4] allows for a reduction of a judgment by the amount paid by another tortfeasor in exchange for a covenant not to sue, we are persuaded that the legislature did not intend that such reduction may benefit an intentional wrongdoer. It would be nonsensical to hold that while an intentional tortfeasor may not profit by means of contribution from a fellow wrongdoer, he may nevertheless secure a reduction in the judgment against him by the sum paid to plaintiff in exchange for a covenant not to sue. We refuse to presume that the legislature intended this incongruous result. See R.C. 1.47(C).

Based on the foregoing, we conclude that plaintiffs presented sufficient evidence to create a jury question as to whether or not defendant's conduct was intentional. It follows that the court of appeals erred in ruling that the defendant was entitled to a directed verdict and we therefore reverse and reinstate the verdict in its full amount.

## II

The next issue presented for our consideration is whether an intentionally injured worker, by applying for and receiving benefits through the workers' compensation system, is thereby precluded from seeking common-law damages against his employer for the same injury. We hold

---

[4] R.C. 2307.32(F) provides:

"When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

"(1) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms otherwise provide, but it reduces the claim against the other to the extent of any amount stipulated by the release or covenant, or in the amount of the consideration paid for it, whichever is the greater;

"(2) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

that an employee is not barred from recovery for an intentional tort by his acceptance of such benefits.

Although *Blankenship, supra,* made no express statement to this effect, the spirit and purpose of that decision, and of the Ohio Workers' Compensation Act, support this result. In *Blankenship,* this court held that "the protection afforded by the Act has always been for negligent acts and not for intentional tortious conduct." *Id.* at 614. To limit a worker injured by the employer's intentional misconduct to workers' compensation benefits would actually encourage such conduct. *Id.* To bar an intentionally injured worker from the courtroom because he has received such benefits would have the same effect. An employer in such a case could merely refrain from contesting the claim, thereby facilitating the receipt of limited compensation, and then reap the rewards of absolute immunity from further liability. This court will not foster such practices.

Nor will we force an intentionally injured employee to choose which remedy to pursue. In most cases, practical considerations will compel the worker to accept the easier, more immediate relief afforded by the Act, even though these benefits do not fully compensate the worker. Most seriously injured workers are not in a financial position to wait out a lengthy, expensive, and risky court proceeding to be compensated for the injury, due to the problems of pressing medical bills, and often the inability to work. Many will thus be forced by harsh realities to opt for workers' compensation. To consider the receipt of benefits a forfeiture of an employee's right to pursue the employer in the courts would not only be harsh and unjust, it would also frustrate the laudable purposes of the Act and emasculate our holding in *Blankenship.* Further, it would allow the employer to escape any meaningful responsibility for its abuses.

This result is implied in *Nayman* v. *Kilbane* (1982), 1 Ohio St. 3d 269, in which this court refused to issue a writ prohibiting the court of common pleas from proceeding in a case where a worker who had already received workers' compensation benefits was seeking common-law damages from his employer for intentionally inflicting the injury. A federal district court in this state has similarly held that forcing an intentionally injured worker to elect his remedy "runs counter to the goals expressed in *Blankenship.* * * *" *Gross* v. *Kenton Structural & Ornamental Ironworks* (S.D. Ohio 1984), 581 F. Supp. 390, 395.

Allowing a worker to receive workers' compensation benefits in conjunction with common-law damages in no way constitutes a double recovery. The common-law award represents a *supplemental* remedy for pain and suffering, and spousal loss of services. It also provides an avenue for the imposition of punitive sanctions on employers who engage in intentional wrongdoing. None of these types of relief is available under the Act.

Nor does the determination of the Industrial Commission that the injury arose out of employment constitute *res judicata,* barring the claimant from litigating the issue of intentional conduct. *Res judicata* and collateral

estoppel do not apply unless there is an identity of parties and issues. *Beatrice Foods Co.* v. *Lindley* (1982), 70 Ohio St. 2d 29, 35 [24 O.O.3d 68]. The requisite identity of issues is absent here. The question of intentional infliction of injury is not an issue before the Industrial Commission in awarding workers' compensation benefits. The conclusion of the commission that the injury arose out of the employment will not estop the claimant from pursuing his common-law remedies for intentional tort. See *Gross, supra,* at 395-396.

Nor are we convinced that a different result is mandated by this court's holding in *Kaiser* v. *Strall* (1983), 5 Ohio St. 3d 91. In that case, we refused to allow a worker, whose injury had been deemed compensable under the Act, to pursue a civil action against her fellow worker who had caused the injury. The fellow-servant immunity conferred by R.C. 4123.741[5] was considered to be controlling. *Kaiser,* however, is readily distinguishable from the instant causes in that the plaintiff therein was attempting to recover damages under a negligence theory, rather than one of intentional tort. Common-law damages are clearly unavailable under R.C. 4123.741 for injuries negligently inflicted by a co-employee in the course of employment. Today's holding is restricted to injuries which are received by a worker due to intentional misconduct. Thus, *Kaiser* is inapposite.

Finally, an employer who has been held liable for an intentional tort is not entitled to a setoff of the award in the amount of workers' compensation benefits received by the employee or his representative. See *Trumbull Cliffs Furnace Co.* v. *Shachovsky* (1924), 111 Ohio St. 791. In *Trumbull,* we held that "the compensation provided by the Workmen's Compensation Law is in the nature of an occupational insurance, and, like general insurance, cannot be deducted and treated as an offset for claims for damages for wrongful injury or death. * * *" *Id.* at 796-797.

In conclusion, we hold that the receipt of workers' compensation benefits does not preclude an employee or his representative from pursuing a common-law action for damages against his employer for an intentional tort.

Based on the foregoing, we hereby reverse that portion of the judgment of the court of appeals in case No. 84-339 which reversed the jury verdict for plaintiff, and remand this cause for retrial on the issue of damages only. We likewise reverse the summary judgment in favor of

---

[5] R.C. 4123.741 states:

"No employee of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, or for any death resulting from such injury or occupational disease, on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."

defendant in case No. 84-139 and remand that cause to the court of common pleas for further proceedings. Finally, in case No. 84-409, we reverse the judgment of the court of appeals for reasons explained in Part I of this opinion, and reinstate the judgment of the court of common pleas on the jury verdict for plaintiffs. Further proceedings in the respective common pleas courts shall be consistent with this opinion.

*Judgments accordingly.*

CELEBREZZE, C.J., SWEENEY and J. P. CELEBREZZE, JJ., concur.

LOCHER, J., concurs in part and dissents in part.

W. BROWN and HOLMES, JJ., separately dissent.

LOCHER, J., concurring in part and dissenting in part. I join the dissents of Justice William B. Brown and Justice Holmes with regard to the double recovery issue, finding the language of the Ohio Constitution quite clear in precluding two compensatory awards for the same injury. Assuming, *arguendo,* that the claimants herein are not precluded from pursuing common-law remedies, I find it necessary to express my thoughts on the majority's application of its definition of intent.

Initially, I agree with the first paragraph of the syllabus of the court in defining an intentional tort in line with Prosser's view. (See *Blankenship* v. *Cincinnati Milacron Chemicals* [1982], 69 Ohio St. 2d 608, 620 [23 O.O.3d 504], Locher, J., concurring in part and dissenting in part.) Essentially, this view is as follows:

"* * * [I]ntent is broader than a desire or purpose to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor *believes* are *substantially certain* to follow from what the actor does. * * *

"* * *

"On the other hand, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong. * * *" (Emphasis added.) Prosser & Keeton, Law of Torts (5 Ed. 1984) 35, 36, Section 8.

However, as I stated in *Blankenship, supra,* it is the province of the trier of fact, not of this court, to apply this test to the facts at hand. This court should make no independent decision as to the mental state of the employers involved. It so happens that the correct jury charges were given in the *Hamlin* and *Gains* cases; the analysis should end at that point.

In *Blankenship* this court remanded the case for further consideration in light of the syllabus adopted. We should not go beyond the *Blankenship* ruling by deciding the instant cases *de novo*.

Accordingly, I concur in the first paragraph of the syllabus only to the extent that the question of intent is left to the trier of fact. I do not concur in the second and third paragraphs of the syllabus of the majority opinion.

WILLIAM B. BROWN, J., dissenting. The majority's holding that the receipt of workers' compensation benefits does not preclude an employee from also pursuing a common-law action for damages against his employer for an intentional tort is not only inconsistent with the legal analysis employed in *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504], it is more importantly in direct contravention of the Ohio Constitution. Accordingly, I dissent.

In *Blankenship*, this court reasoned that an employee is not precluded by the Ohio Constitution or R.C. 4123.74 from enforcing common-law remedies against one's employer for an intentional tort since such torts are *not* compensable under the workers' compensation laws. Intentional torts are not covered under workers' compensation because the initiating cause of injury is not a hazard of employment and the resulting injury cannot be said to have been received by an employee in the course of or arising out of his employment. *Blankenship, supra*, at 612-613.

The majority, in reaching its conclusion, ignores this legal basis for the *Blankenship* decision. One act of an employer cannot logically be within the scope of employment while at the same time not within the scope of employment. Nor can one act simultaneously be both a hazard of employment and not a hazard of employment. One act of an employer, under *Blankenship*, simply cannot be both negligent and intentional. Hence, an injury may either be compensable under the workers' compensation system or be compensable at common law for an intentional tort. It cannot logically be compensable under both, as the majority so finds.

This court recognized in *Blankenship* at page 614 that the Workers' Compensation Act was intended to operate "* * * as a balance of mutual compromise between the interests of the employer and the employee." The majority's decision totally and unwarrantedly destroys this balance—the employee retains the benefits of the Act and eschews the burden of relinquishment of possibly greater award at common law, while the employer retains the burden of mandatory payment but has lost the benefit of freedom from potentially unlimited liability. Under the majority's analysis, there is simply no balance; an employee would indeed be foolhardy not to pursue suits in both forums for every injury sustained. The majority's rationale encourages every employee to allege intentional tortious conduct upon facts which can only support recovery under a pure negligence theory. Clearly, the majority's decision undermines the very theory of the workers' compensation system.

Moreover, I would stress that this court just recently decided *Kaiser* v. *Strall* (1983), 5 Ohio St. 3d 91, 94, the legal analysis of which is equally applicable to this case, wherein it was stated as follows:

"* * * What appellants actually seek is this court's approbation permitting them to assert before an administrative body that the subject injury is within its jurisdiction, argue the opposite to invoke the authority of a common-law tribunal, and then be free to pick the best offer. Our system for legal redress of injuries is not a shopping mart, however. A claimant must frequently make a binding choice between alternative forms of relief. Indeed, by electing to seek a potentially preemptive administrative remedy, appellant herein voluntarily jeopardized her right to have her claim adjudicated in a civil proceeding."

Even if I were to conclude that there are strong public policy considerations which militate against a finding that an employee, by receiving workers' compensation benefits, waives his right to institute a tort action when his employer's conduct amounts to an intentional tort, I would nonetheless be unable, pursuant to my oath of office, to so hold, for such a position is irreconcilable with the plain language of Section 35, Article II of the Ohio Constitution. This section provides as follows:

"* * * [Workers'] compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law * * * shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease."

Pursuant to this section, and in conjunction with R.C. 4123.74 which provides that "[e]mployers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment," an employer is immune from two separate litigations for a single injury. The *Blankenship* decision did not and indeed could not erase these dispositive words from the Ohio Constitution.

For the foregoing reasons, I respectfully dissent.

HOLMES, J., dissenting. The majority opinion is completely unfounded, unwarranted, and without any basis in the law of Ohio. Although, in my view, *Blankenship*[6] was an aberration, and served only to thoroughly confuse and confound Ohio's legal community, this majority opinion goes even further in effecting a compound fracture of workers' compensation law. The majority opinion is an extremely result-oriented approach in total disregard of all legal precedent. Therefore, I most strongly dissent.

When viewed in light of the history and scope of the Ohio workers'

---

[6] *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504].

compensation system, it is clear that recovery of common-law damages may only be had where there is demonstrated a purpose, design, or intent to injure on the part of the employer. In this type of situation, it is also clear that the General Assembly has given the intentionally injured worker a choice to pursue a claim for workers' compensation benefits or a common-law action, but not both.

The historical basis of a common-law remedy for compensatory industrial injuries was at that time a valid attempt to attribute fault among the parties. The employee had to demonstrate that his injury was the result of his employer's failure to observe a legal duty. In turn, the employer's defenses were typically based on either: the fault of the injured employee or that of a co-worker, or the injured employee's appreciation of the inherent risk of the workplace.

Under this system, however, a substantial proportion of industrial accidents remained uncompensated as the burden ultimately fell upon the injured worker. In Ohio, it was estimated that ninety-four percent of the injuries went uncompensated. Report of Ohio Employers' Liability Commission (1911), Part 1, xxxv through xliv.

In response to these conditions, the General Assembly enacted the Ohio Workers' Compensation Law in 1913. (103 Ohio Laws 72.) Subsequently, in 1924, the General Assembly placed a limitation upon the remedies available to an injured worker. Section 35, Article II of the Ohio Constitution was amended to read, as it does today:

"* * * Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law * * * shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease."

In an early version of the workers' compensation provisions, the General Code provided for an employee's election of remedies between compensation benefits and a common-law action against his employer when the injury resulted from a willful act committed by such employer. The term "willful act" was defined as that "done knowingly and purposely with the direct object of injuring another." G.C. 1465-76. In 1931, however, the General Assembly repealed the proviso which permitted an employee's election of the alternative common-law remedy for an intentional tort. 114 Ohio Laws 26. The employer's immunity which stemmed from this legislation is now contained within the current version of R.C. 4123.74:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, * * *."

While Section 35, Article II of the Ohio Constitution and R.C. 4123.74

are unequivocally clear on their face, the majority opinion conveniently casts them aside without regard, and states that an additional common-law award to an already existing award of workers' compensation merely represents "a *supplemental* remedy." (Emphasis *sic*.) I am appalled that such a statement was made by a majority of this court in direct contrast to the constitutional and statutory mandates. If stacking damages from two separate litigations for a single injury does not constitute a double recovery, then our judiciary has misinterpreted the law for centuries. In addition, the majority compounds its mistake by not allowing an employer who has been held liable for an intentional tort to set off the amount of workers' compensation benefits received by the employee.

In *Blankenship, supra,* a majority of this court interpreted the relevant provisions within the workers' compensation law and held that an employee is not precluded by these axioms from enforcing his common-law remedies against his employer for an intentional tort. The rationale for this decision was stated as: "[S]ince an employer's intentional conduct does not arise out of employment, R.C. 4123.74 does not bestow upon employers immunity from civil liability for their intentional torts and an employee may resort to a civil suit for damages." *Id.* at 613. The court did not, however, state that an injured employee could pursue his common-law remedies while, at the same time, receiving workers' compensation benefits.

The *Blankenship* decision has understandably been subject to much criticism by legal commentators. In his extensive analysis of workers' compensation, Professor Larson states:

"The Ohio Supreme Court * * * [in *Blankenship*] adopts the *distinctly out-of-line view* that employees and their spouses can sue their employer in tort for the intentional use of chemicals it knew were harmful, and for failure to warn and to report the dangerous conditions to federal and state agencies as required." (Emphasis added.) 2A Larson, Law of Workmen's Compensation (1983) 13-8 to 13-9, Section 68.13, fn. 10.1.

The majority opinion also extensively cites the work of Deans Prosser and Keeton with respect to the definition of "intentional," but it fails to mention their view on the exclusivity of the remedies available to an injured employee under workers' compensation statutes. These commentators state:

"The vast majority of courts have held that conduct that falls short of an intent to injure will not permit an employee to overcome the exclusivity provision. * * * [Citations in footnote omitted.] However, some courts have recently departed from this narrow interpretation. * * * [Footnote citing *Blankenship* and one other case.] So gross negligence, fraudulent nondisclosure of serious risks, and the like, may be regarded as such intentional misconduct as to justify a recovery against the employer on a tort theory. This would appear to be *a very doubtful interpretation of most statutes.*" (Emphasis added.) Prosser & Keeton, Law of Torts (5 Ed. 1984)

576-577, Section 80. See, also, Birnbaum & Wrubel, Workers' Compensation and the Employer's Immunity Shield: Recent Exceptions to Exclusivity (1982), 5 J. Prod. Liab. 119.

While virtually every jurisdiction[7] has scorned the premise of *Blankenship,* today's majority uses it as a springboard to leap into a deeper sea of absurdity.

Finally, I turn to the court's new and ill-advised definition of in intentional tort. In *Payne* v. *Vance* (1921), 103 Ohio St. 59, this court distinguished negligence from an intentional or willful tort by concluding that the latter required an additional element of intent or purpose on the part of the actor. *Id.* at paragraph one of the syllabus. It is that element of intent or purpose, when coupled with an otherwise negligent act, which constitutes an intentional tort.

Furthermore, we have already held that two requirements are necessary to establish an intentional tort in order for an employee to pursue a common-law action against his employer. First, an injured worker must prove that the employer's act was done knowingly and purposely. Second, it must be established that the act was committed with the object of injuring another. *Gildersleeve* v. *Newton Steel Co.* (1924), 109 Ohio St. 341. The majority has, once again, conveniently failed to mention this authority.

By its expansive definition of intentional, this court has succeeded in creating a gray area between an intentional act and a mere negligent act. What once served our profession with pristine clarity is now befuddled

---

[7] See *Eason* v. *Frontier Air Lines, Inc.* (C.A.10, 1981), 636 F. 2d 293; *Keating* v. *Shell Chemical Co.* (C.A.5, 1980), 610 F. 2d 328; *Houston* v. *Bechtel Assoc. Professional Corp.* (D.D.C. 1981), 522 F. Supp 1094; *Reese* v. *Liberty Mut. Ins. Co.* (N.D. Miss. 1979), 473 F. Supp. 456; *Provo* v. *Bunker Hill Co.* (D. Idaho 1975), 393 F. Supp. 778; *Johnson* v. *Kerr-McGee Oil Indus., Inc.* (App. 1981), 129 Ariz. 393, 631 P. 2d 548; *Griffin* v. *George's, Inc.* (1979), 267 Ark. 91, 589 S.W. 2d 24; *Law* v. *Dartt* (1952), 109 Cal. App. 2d 508, 240 P. 2d 1013; *Sullivan* v. *Liberty Mut. Ins. Co.* (Fla. App. 1979), 367 So. 2d 658; *Southern Wire & Iron, Inc.* v. *Fowler* (1962), 217 Ga. 727, 124 S.E. 2d 738; *Collier* v. *Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E. 2d 198; *Cunningham* v. *Aluminum Co. of Amer., Inc.* (Ind. App. 1981), 417 N.E. 2d 1186; *Duncan* v. *Perry Packing Co.* (1946), 162 Kan. 79, 174 P. 2d 78; *Bazley* v. *Tortorich* (La. 1981), 397 So. 2d 475; *Knoche* v. *Cox* (1978), 282 Md. 447, 385 A. 2d 1179; *Sewell* v. *Bathey Mfg. Co.* (1981), 103 Mich. App. 732, 303 N.W. 2d 876; *Leicht* v. *Venture Stores, Inc.* (Mo. App. 1978), 562 S.W. 2d 401; *Great Western Sugar Co.* v. *District Court* (Mont. 1980), 610 P. 2d 717; *Kennecott Copper Corp.* v. *Reyes* (1959), 75 Nev. 212, 337 P. 2d 624; *Wilkinson* v. *Achber* (1957), 101 N.H. 7, 131 A. 2d 51; *Bryan* v. *Jeffers* (1968), 103 N.J. Super 522, 248 A. 2d 129; *Sanford* v. *Presto Mfg. Co.* (App. 1979), 92 N.M. 746, 594 P. 2d 1202; *Santiago* v. *Brill Monfort Co.* (1961), 10 N.Y. 2d 718, 176 N.E. 2d 835; *Schlenk* v. *Aerial Contractors, Inc.* (N.D. 1978), 268 N.W. 2d 466; *Roberts* v. *Barclay* (Okla. 1962), 369 P. 2d 808; *Duk Hwan Chung* v. *Fred Meyer, Inc.* (1976), 276 Ore. 809, 556 P. 2d 683; *Evans* v. *Allentown Portland Cement Co.* (1969), 433 Pa. 595, 252 A. 2d 646; *Cooper* v. *Queen* (Tenn. App. 1979), 586 S.W. 2d 830; *Castleberry* v. *Goolsby Bldg. Corp.* (Tex. 1981), 617 S.W. 2d 665; *Kittell* v. *Vermont Weatherboard, Inc.* (1980), 138 Vt. 439, 417 A. 2d 926; *Foster* v. *Allsop Automatic, Inc.* (1976), 86 Wash. 2d 579, 547 P. 2d 856; *Laffin* v. *Chemical Supply Co.* (1977), 77 Wis. 2d 353, 253 N.W. 2d 51.

with haze. This is never more evident than in the case *sub judice* when the majority attempted to apply its new definition to the facts presented.

Specifically, in case No. 84-139, the Jones complaint alleged "negligence" and that the defendants "knew, or should have known," the perilous situation to its employees. While the trial court correctly determined that this language obviously connotes a negligence pleading, this court, in its bold rush to find a cause of action, states that such language actually describes an intentional tort. This is a prime example of torturing the law in order to arrive at a predetermined destination prohibited by constitution and statute alike.

In my view, the law of workers' compensation was, until now, a type of needed social insurance and also a form of strict liability. The employee was duly compensated for his injuries and the employer was charged with such injuries arising out of his business without regard to his negligence or that of the employee. In addition, the employer was liable for injuries caused by unavoidable accidents as well as those caused by the worker or a co-worker. This court, with its decision today, has drastically changed the very nature of the system.

In properly applying the appropriate constitutional and statutory provisions, this court should attempt to justly compensate injured workers while, at the same time, protecting businesses against double recoveries, the costs of which will ultimately be passed on to all consumers. This was the initial purpose of the workers' compensation legislation, and should still be the law today.

Therefore, I would affirm the judgments of each of the appellate courts.