HELTON *v.* KING KWIK MINIT MARKET, INC.

(No. A-84-03248—Decided November 14, 1985.)

Court of Common Pleas of Hamilton County.

*John H. Burlew,* for plaintiff.
*Stephen A. Bailey,* for defendant.

CRUSH, J. This matter is before the court upon defendant's motion for summary judgment, together with relevant pleadings, deposition, affidavits, memoranda and oral argument.

Plaintiff, an employee of defendant, King Kwik Minit Market, Inc., at all times pertinent to this action, seeks recompense for personal injuries sustained at the King Kwik location at 3056 West McMicken. The salient allegations of the complaint are as follows:

"6. On * * * November 17, 1983 in the early morning hours Plaintiff was assaulted, battered and raped while in the scope of her employment. * * *

"7. There have been cases of serious misconduct directed toward the Defendant and its employees, working at the store in this particular location.
"* * *

"9. With knowledge of the dangers * * *, Defendant hired Plaintiff to operate this store with no means of protecting herself or deterring criminal misconduct.

"10. Defendant knew or should have known the Plaintiff's life was in danger and that she was in danger * * * [of] * * * violent criminal assaults * * *.

"11. Notwithstanding the knowledge of Defendant of the high probability of criminal attack, Defendant failed to provide Plaintiff with any security devices, weapons or personnel to protect herself * * *.

"12. The omissions and commissions by Defendant were intentional * * *."

Defendant asserts that the plaintiff was covered by workers' compensation, received compensation, and is, thus, not entitled to recovery directly against her employer. Plaintiff asserts that her employer knowingly subjected her to substantially certain harm, and is thus directly liable under the rationale of *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504], and *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90.

At the very outset, there is a technical problem standing in the way of a potential summary judgment. Although orally, and off the record, each attorney admits that the plaintiff was subject to workers' compensation, and received benefits thereunder, this fact is not established anywhere in the pleadings or evidence. The only mention of workers' compensation in the pleadings, deposition or affidavits is the statement in the third defense of defendant's answer that King Kwik is a complying employer. This statement, though unrefuted, is not to be taken as true:

"*Pleadings.* There shall be a complaint and an answer * * *." (Civ. R. 7; note: there is no requirement of a reply to an answer.)

"*Effect of failure to deny.* * * * Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided." (Civ. R. 8[D].)

The pertinent law governing this situation is as follows:

"An employee is not precluded * * * [under workers' compensation] * * * from enforcing his common law remedies against his employer for an intentional tort." (*Blankenship, supra,* at the syllabus.)

"An intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." (*Jones, supra,* paragraph one of the syllabus.)

"The actor must know or believe that harm is a substantially certain consequence of his act before intent to injure will be inferred. The existence of this knowledge or intent on the part of the actor may be inferred from his conduct and surrounding circumstances." (*Jones, supra,* at 95.)

The risk of harm to plaintiff in the work that she did, as developed by the evidence, can be summarized as follows:

Plaintiff worked third shift at the time of the rape; the rape occurred approximately between 2:00 a.m. and 3:00 a.m.; King Kwik had a policy of not assigning women to the third shift unless they specifically requested it; plaintiff received training and manuals regarding safety and security measures at King Kwik stores; several unspecified problems had occurred during third shift, at the King Kwik store in question before the rape, as a result of which plaintiff had been taken off third shift; had King Kwik known that plaintiff was going to work the third shift, King Kwik would not have allowed it; seven incidents involving theft losses or shortages had occurred at the King Kwik in question during the past five years; seven employees had been molested or assaulted in all of the King Kwik stores in Cincinnati in the last five years; King Kwik has had the policy for eleven years of giving police officers free coffee to

discourage robberies; plaintiff was given a training manual and a three-week training program from November 19, 1982 through December 1, 1982; the security camera in the store had no film in it on the night in question; King Kwik operated eighty-nine stores in the greater Cincinnati area, and averaged between 1171 and 1404 employees for the years, 1980, 1981, 1982, 1983; only $50 was kept in the cash register at night; security people in civilian dress came by the stores periodically at night; plaintiff had worked first shift (8:00 a.m. to 4:00 p.m. or 10:00 a.m. to 6:00 p.m.) and second shift (4:00 p.m. to 12:00 a.m. or 5:00 p.m. to 11:00 p.m.) for seven or eight months without robberies, but only had problems with customers; plaintiff says she had no problems at the store for the three weeks prior to the rape; plaintiff's supervisor told her about weird and crazy people coming in the stores at night, and they could cause problems; plaintiff knew there was a greater potential for robberies on the third shift.

Some of the facts recited above are in dispute, but the disputed facts are recited in the interpretation most favorable to the plaintiff. In any case, allegations in the complaint contrary to the affidavits cannot stand. (*Merritt* v. *Deaconess Hospital* [C.P. 1975], 48 Ohio Misc. 7 [2 O.O.3d 245].)

Assuming, then, the correctness of the facts recited above, it is reasonable to state in summary that robberies (and rapes) are more likely at night in twenty-four-hour-a-day stores; that troublesome people entered King Kwik stores regularly at night; that King Kwik was aware of the security problems of nighttime employment, and had instituted some safety measures including the training of its employees in safety precautions; and that in five years in eighty-nine stores, with an average total employment of over twelve hundred people, only seven incidents of molestation or assault had occurred.

In even briefer summation, the facts would indicate that there is a possibility of molestation or assault against King Kwik employees, which, historically, has occurred to only seven of the over twelve hundred King Kwik employees in the last five years.

Plaintiff can prevail in this matter if she shows that her injuries were intentionally inflicted by King Kwik. "Intentionally" has been defined by judicial gloss to mean "substantially certain to occur." In this case, the plaintiff faces an insurmountable hurdle in attempting to show that a twelve hundred to seven chance against injury raises a substantial certainty that injury will occur.

Consider the problem from another viewpoint. If the plaintiff had been told that she had seven chances in twelve hundred of getting a raise in the next five years, plaintiff could hardly conclude that she was substantially certain of getting the raise.

Referring again to the *Jones* case, *supra,* we read as follows at 95:

"When a defendant acts despite his knowledge that the risk is appreciable, his conduct is negligent. Where the risk is great, his actions may be characterized as reckless or wanton, but not intentional."

It is arguable that defendant knew about the risk in this case, and that, therefore, the risk was appreciable (*i.e.,* "capable of being noticed" — American Heritage Dictionary of the English Language). It is not possible, under the facts, to argue that the risk was great. It is certainly not remotely arguable that the risk was substantially certain of fruition.

As sympathetic as the court must be with the terrible tragedy inflicted upon the plaintiff, the court cannot, by any known method of ratiocination, or by use of the English language in any traditional sense, convert a remote possibility (twelve hundred to seven) of harm into a substantial certainty of harm.

Admittedly, statistics are not the only method of determining substantial certainty. The court could also consider the inherent dangerousness of a situation. But where the statistics are known, gathered over a substantial period of time, and point at best to a remote possibility, the statistics must prevail.

Plaintiff has orally cited to this court *Bryant* v. *Lawson Milk Co.* (1985), 22 Ohio App. 3d 69. In the *Bryant* case, the plaintiff was assaulted and raped while working alone at a Lawson retail store on an 11:00 p.m. to 6:00 a.m. shift. Plaintiff claimed that the working conditions were unsafe and that she had not been trained in handling violent situations. The court of appeals reversed the trial court's granting of a summary judgment in favor of the Lawson company. However, the statistics in that case were patently more prejudicial to the defendant than in the instant matter. A total of two hundred seventy-four robberies had occurred in Lawson stores in the Columbus area in a five-year period, nine of them in the very store where plaintiff worked. Presumably, the court of appeals reasoned that if one worked at the particular Lawson store for any length of time, becoming the victim of a robbery was substantially certain. No such inference can be made in the instant case, where no prior robberies or rapes had occurred at the location in question, and only seven robberies had occurred in all King Kwik stores combined over a five-year period.

For the foregoing reasons, it being apparent that reasonable minds can come only to the conclusion that defendant must prevail, summary judgment is awarded defendant — subject to defense attorney's placing of record an affidavit, pursuant to Civ. R. 56(F), verifying King Kwik's participation in the Workers' Compensation Fund, and plaintiff's receiving benefits thereunder (all of which is privately admitted by the attorneys, but apparently, by inadvertence, not placed in the record).

*Judgment for defendant.*