887 F.2d 1086
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The CONTINENTAL INSURANCE COMPANY, Plaintiff-Appellee,
v.
The AMERICAN SHIPBUILDING COMPANY, Defendant-Appellant.
 No. 88-3955.
 United States Court of Appeals, Sixth Circuit.
 Oct. 20, 1989.
 
 Before BOYCE F. MARTIN, Jr., and MILBURN, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant appeals summary judgment for the plaintiff in this Ohio diversity action for a declaratory judgment to determine the rights under an insurance policy. We affirm the district court's grant of summary judgment.
 
 
 2
 In July 1984, Leon Tucker sued defendant, American Shipbuilding Company, in Ohio state court, alleging that he was injured from exposure to toxic fumes at defendant's shipyard. Specifically, Tucker alleged that, as a welder in the Lorain Shipyard, he was continually exposed to toxic substances and thereby permanently disabled. Tucker further alleged that the defendant knew or should have known that his work involved inhaling toxic substances, that the dangerous propensities of the substances were known to the defendant, that the defendant intentionally exposed him to the toxic substances, that the defendant intentionally withheld information and warnings regarding the toxic substances from Tucker and his physicians, that defendants failed to provide him with a safe workplace, and that the defendants acted in willful and/or wanton disregard for his life and health.
 
 
 3
 The defendant notified the plaintiff, Continental Insurance Co., its insurance carrier, of the Tucker action. Plaintiff assumed the legal representation of defendant in the state action with a reservation of rights. On November 14, 1985, plaintiff brought a declaratory judgment action, based on diversity, in the Northern District of Ohio, requesting the court to determine the rights of the respective parties under the insurance contract.
 
 
 4
 The policy provides that the plaintiff will defend and indemnify the defendant for claims of liability for an "occurrence" during the policy period. An "occurrence" is defined as an event resulting in bodily injury that was not expected or intended from the standpoint of the insured. The policy further excludes coverage for bodily injuries to defendant's employees arising out of and in the course of their employment. On February 14, 1986, the plaintiff filed a Motion for Summary Judgment alleging that Tucker's complaint necessarily alleged an intentional injury and therefore did not allege an "occurrence" covered by the policy.
 
 
 5
 After reviewing the complaint in this declaratory judgment action, the complaint in Tucker's underlying personal injury action, and the insurance policy, the district court granted the plaintiff's Motion for Summary Judgment and denied the defendant's Cross Motion for Partial Summary Judgment, finding that the issue was governed entirely by Wedge Products, Inc. v. Hartford Equity Sales Co., 31 Ohio St.3d 65, 509 N.E.2d 74 (1987).
 
 
 6
 Wedge involves a factual situation and insurance contract virtually identical to the one in this case. In Wedge, the Ohio Supreme Court noted that under Ohio law, an employee may bring an intentional tort action against his or her employer so long as the injury is substantially certain to occur. Wedge, 509 N.E.2d at 75 (citing Jones v. VIP Development Co., 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984)). The court reasoned that even if the employer in Wedge did not "intend" an injury, surely it "expected" one under the terms of the insurance policy exclusion, if it acted with a belief that the victims were substantially certain to be injured. Wedge, 509 N.E.2d at 75-76. Consequently, the court held that:
 
 
 7
 an intentional tort allegedly committed by an employer against its employee is not covered by an insurance policy which provides protection for bodily injuries "neither expected nor intended" by the employer.
 
 
 8
 Id. at 76.
 
 
 9
 Recently, the Ohio legislature enacted a law requiring an employee to prove an employer's specific intent to cause an injury in order to bring an intentional tort claim against the employer, thus modifying the Jones elements. Ohio Rev.Code Ann. 4121.80 (Anderson 1986). That statute does not govern this case because the injury here predates the new legislation. Van Fossen v. Babcock & Wilcox Co., 36 Ohio St.3d 100, 522 N.E.2d 489 (1988). However, the statutory enactment apparently sparked the defendant's contention that the district court erred in ruling that this case was governed by Wedge.
 
 
 10
 The defendant concedes that the policy between plaintiff and defendant excludes coverage and legal representation for torts committed by the defendant where the defendant intended the injury to occur. The defendant asserts that the plaintiff relies solely on the fact that Mr. Tucker brought an action alleging an intentional tort to bring this case within the limits of the policy exclusion. Defendant argues that Jones does not require proof that an employer intended or expected to cause an injury to an employee in order for that employee claimant to prove an intentional tort. Jones v. VIP Development Co., 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984).
 
 
 11
 The core of defendant's argument is that under Jones, less that a specific intent or a substantial certainty of injuring an employee is sufficient to support an intentional tort action against the employer, whereas, the insurance policy here specifically requires an intent or expectation to injure in order to exclude representation and indemnification under the policy. Therefore, the mere fact that Tucker brought an intentional tort action does not trigger the exclusion clause in the insurance policy.
 
 
 12
 Defendant contends that under the Ohio Supreme Court's analysis of the Jones standard in Van Fosssen, it is clear that an employer, under Jones, can be held liable for expecting the injury to occur despite an employee's showing of less than a specific expectation of injury by the employer. Therefore, the policy's exclusion of representation where the insured party "expected" an injury to occur is not applicable short of a showing by the employee that the employer specifically expected an injury.
 
 
 13
 Despite defendant's energetic distinctions, we hold that Wedge governs the issue in this case. In Wedge, the Ohio Supreme Court relied on the Jones standard in its holding that where an employee alleged an intentional tort, insurance coverage was excluded under a policy nearly identical to the one in this case. The Wedge court stated,
 
 
 14
 Under the Jones test an intentional tort by Wedge must necessarily involve either an intent to injure or a belief that injury is substantially certain to occur. Clearly, no coverage is provided if Wedge intended to injure Pariseau and Walls. More importantly, we are unable to see how Wedge could have committed any acts with the belief that Pariseau or Walls were substantially certain to be injured, yet not have "expected " such injuries to occur.
 
 
 15
 31 Ohio St.3d at 66-67. While the court "clarified" the Jones standard in Van Fossen, that clarification did not alter the essential intentional tort theory set forth in Jones and applied in Wedge. See Kunkler v. Goodyear Tire & Rubber Co., 36 Ohio St.3d 135, 522 N.E.2d 477 (1988). Consequently, the defendant's argument that the Ohio common law allows an employee to sue under an intentional tort theory without a showing of intent or expectation to injure is moot after Wedge. In the present case even though specific intent may be lacking, the substantial certainty of an injury from the employer's conduct demonstrates that such an injury was "expected" under the exclusion terms of the insurance policy. In its clarification of the Jones standard, the Ohio Supreme Court expressly retained the substantial certainty of injury prong of the Jones standard in its delineation of the intent requirement. Van Fossen, 522 N.E.2d at 504. Therefore, even after Van Fossen, Wedge controls the insurance coverage question in this case.
 
 
 16
 For these reasons, we affirm the district court.