OPINION
{¶ 1} Plaintiffs-appellants, Douglas W. Scrivner, III (individually, "appellant") and Dawn Scrivner, both individually and as mother and natural guardian of Sierra Scrivner, a minor, appeal from a judgment of the Ohio Court of Claims in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC").
 {¶ 2} On January 21, 2003, appellants filed a complaint against ODRC alleging ODRC committed an intentional tort against appellant in the course of appellant's employment with ODRC, and that Dawn Scrivner and Sierra Scrivner suffered a loss of consortium as a result of ODRC's actions.
 {¶ 3} The court bifurcated the issues of liability and damages and set the case for trial in December 2003 on the issue of liability only. Appellants subsequently filed motion for a continuance which was granted, and trial was scheduled simultaneously, but not consolidated, with the trial of a companion case in February 2004.
 {¶ 4} In late January 2004, appellants filed a motion for leave to amend their complaint to add a claim for spoliation of evidence. The court held appellants' motion in abeyance until the time of trial.
 {¶ 5} The matter was tried over four days in February 2004, at which time the court granted appellants' motion to amend their complaint. On March 8, 2004, the court issued a decision finding that appellants failed to prove their intentional tort and spoliation of evidence claims by a preponderance of the evidence. Moreover, concluding that the consortium claims were derivative, the court determined that because appellants failed to prove their intentional tort claim, the loss of consortium claims also failed. The court followed its decision with a judgment entry filed the same day. Appellants filed a motion for reconsideration on March 15, 2004; the trial court denied the motion on March 22, 2004.
 {¶ 6} Appellants timely appealed the March 8, 2004 judgment, and advance a single assignment of error, as follows:
The trial court erred to the prejudice of plaintiff/appellant Scrivner in finding that plaintiff/appellant failed to prove by a preponderance of evidence that the Ohio Department of Rehabilitation and Correction committed an intentional tort when it removed required safety restraints.
 {¶ 7} Appellant contends that the trial court erred in finding that he failed to prove his intentional tort claim by a preponderance of the evidence. The essence of appellant's argument is that the trial court's judgment is against the manifest weight of the evidence. ODRC, however, argues that appellant cannot challenge the weight of the evidence because appellant has filed only a partial transcript of evidence. Appellant concedes he has not provided a full transcript of the trial, but argues he included those portions of the record necessary to sustain his argument. Those materials consist of the trial court's decision, the trial testimony of Anthony Brigano, the warden at Warren Correctional Institution ("WCI") at the time of the accident, the trial testimony of Ronald E. Huston, Ph.D., appellant's expert, a mechanical engineer and forensic consultant, and the exhibits admitted at trial. We also note that appellee, pursuant to App.R. 9(B), has supplemented the record with the trial testimony of Francis Manson, the acting temporary supervisor responsible for transportation at WCI on the date of the accident.
 {¶ 8} The duty to provide a transcript for appellate review falls upon the appellant as he bears the burden of showing error by reference to matters in the record. Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385. App.R. 9(B) provides that an appellant who intends to assert on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence shall include in the record "a transcript of all evidence relevant to the findings or conclusion." Although App.R. 9(B) also places some burden for providing an adequate transcript on the appellee, the primary burden of providing a transcript falls upon the appellant. Id., fn. pg. 199.
 {¶ 9} Appellant's failure to provide this court with a full trial transcript is perplexing, given that his sole contention is that the trial court's judgment is against the manifest weight of the evidence. Resolution of such an argument requires this court to examine the entire trial record. Hartt v. Munobe (1993), 67 Ohio St.3d 3, 7, 615 N.E.2d 617,621. An appellant's failure to comply with App.R. 9 usually dictates that this court presume the regularity of the trial court proceedings and accept its judgment. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings and affirm." Knapp, supra, at 199. Thus, this court could affirm the trial court's judgment without addressing the merits of appellant's assignment of error. However, in the interest of justice, we will address appellant's argument utilizing the portion of the record made available to us by appellant.
 {¶ 10} On February 2, 2001, appellant was employed as a corrections officer at WCI in Lebanon, Ohio on the 6 a.m. to 2 p.m. shift. That morning, he was assigned to assist two other corrections officers, Wayne Mitchell and Richard Lake, in transporting two inmates to The Ohio State University Hospital for routine non-essential medical examinations. At the start of the workday, it was snowing and cold outside, but the road conditions were not hazardous. As the morning progressed, road conditions deteriorated due to an accumulation of ice and snow.
 {¶ 11} The vehicle used for the transport was a 15-passenger van which had been extensively modified by ODRC personnel. Specifically, the first bench seat behind the driver and the passenger had been removed and, in its place, a "jump seat" (a single seat from a Jeep) had been bolted to the floor directly behind the driver's seat. Steel and plexiglass barriers were installed both in front of and behind the jump seat to separate it from the three bench seats located at the rear of the van. The two barriers formed a "cage" in which the jump seat was located. The jump seat faced the passenger side of the van such that the occupant had to sit with legs outstretched toward the side door of the van. The jump seat was not equipped with a seatbelt or shoulder harness.
 {¶ 12} The transport van left WCI shortly after 7:00 a.m. and traveled northbound on I-71. Lake drove; Mitchell rode in the passenger seat; appellant rode in the jump seat. Enroute to Columbus, Lake, who was driving approximately 75 miles per hour in the ice-and-snow-covered left lane, lost control of the van; the van slid 271 feet off the roadway at the 81 mile marker and struck a concrete pillar at an estimated speed of 43.8 miles per hour. Mitchell was killed in the accident; appellant was seriously injured.
 {¶ 13} In the complaint, appellant asserted that ODRC committed an intentional tort by ordering him and the other corrections officers to transport inmates to Columbus despite knowledge of dangerous road conditions. The trial court determined that appellant failed to prove this claim by a preponderance of the evidence, and appellant does not assert error in that finding. Appellant also asserted that ODRC committed an intentional tort by requiring him to ride in the jump seat that was not equipped with safety restraints. The trial court determined that appellant also failed to prove this claim by a preponderance of the evidence. Appellant asserts that such finding was in error.
 {¶ 14} The Ohio Supreme Court has defined an intentional tort as "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." Jones v. VIPDevelopment Co. (1984), 15 Ohio St.3d 90, 472 N.E.2d 1046, paragraph one of the syllabus. In Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115,570 N.E.2d 1108, paragraph one of the syllabus, the Ohio Supreme Court set forth the test to determine whether an employer's actions constitute an intentional tort against an employee, holding that an employee must establish the following:
* * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
(Citation omitted.)
 {¶ 15} Further, in paragraph two of the syllabus, the Fyffe court discussed the proof required to prove an intentional tort:
To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent.
(Citation omitted.)
 {¶ 16} Here, the trial court concluded that appellant failed to present sufficient evidence as to the second prong of the Fyffe test, i.e., a showing of knowledge by the employer that there was a "substantial certainty" that an employee would be injured while riding in a jump seat that was not equipped with safety restraints. The court stated:
* * * The court finds that the fact that the jump seat did not have a seatbelt does not give rise to an intentional tort by defendant, even though seatbelts are required not only by [ODRC's] policy and Federal Motor Vehicle Safety Standards, but also as a matter of good sense to prevent injury or death during motor vehicle crashes.
It was not the seatbelt that caused the accident; it was a combination of circumstances to include road conditions and the way the van was being operated. The court finds that although the lack of a seatbelt in van 632 may have contributed to CO Scrivner's injuries in the collision, the lack of a seatbelt in and of itself does not constitute a substantial certainty of injury.
 {¶ 17} In order to show that ODRC had knowledge that the condition of the van was substantially certain to cause harm to its employee, appellant was required to demonstrate that ODRC had "actual knowledge of the exact dangers which ultimately caused injury." Sanek v. DuracoteCorp. (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114, 1117. Appellant contends that Dr. Huston's testimony demonstrates that ODRC had such knowledge. We disagree.
 {¶ 18} During his direct testimony, Dr. Huston opined to a reasonable degree of engineering certainty that, in the event of a collision, an injury was substantially certain to occur to a passenger seated in the jump seat of the subject van for the reason that, without a seatbelt, there was nothing to prevent the passenger from colliding with hard surfaces adjacent to the seat. However, on cross-examination, Dr. Huston admitted that this opinion was premised upon the confluence of the three events: (1) the van being in a collision; (2) the van being operated at a rate of speed in excess of that which was reasonable given the hazardous road conditions; and (3) the van impacting a fixed object at a high rate of speed. Dr. Huston conceded that at the time the corrections officers left WCI in the van, ODRC could not have been certain that any one of these three events would occur, let alone that the conditions would occur concurrently. Thus, the testimony of appellant's own expert established that ODRC could not have had "actual knowledge of the exact dangers which ultimately caused injury" to appellant. Furthermore, Dr. Huston conceded that a passenger riding in the jump seat could still have been injured in this type of high-speed impact collision even if the occupant was wearing a seatbelt. Thus, as noted by the trial court, while the lack of safety restraints in the van may have contributed to appellant's injuries in the collision, the lack of safety restraints was not a proximate cause of injury.
 {¶ 19} It is well-established that the use of safety restraints in motor vehicles is an effective means of preventing or reducing injuries and deaths to passengers involved in accidents. At oral argument, counsel for ODRC conceded that ODRC was negligent in installing a jump seat that was not equipped with any safety restraints. However, employer negligence, or even recklessness, is insufficient to support an action in intentional tort. The mere knowledge and appreciation of a risk does not constitute intent. Fyffe, supra, paragraph two of the syllabus.
 {¶ 20} For the foregoing reasons, appellant's assignment of error is overruled, and the judgment of the Ohio Court of Claims is hereby affirmed.
Judgment affirmed.
Petree and Lazarus, JJ., concur.