OPINION
{¶ 1} Appellants, Richard B. and Cynthia Beth Switka, filed their complaint against Appellees, the City of Youngstown and Elias Moody on October 3, 2003. Richard B. Switka ("Switka") and Elias Moody ("Moody") were both drivers/laborers for the City of Youngstown Street Department. Switka was injured by Moody at work on October 30, 2002. Switka sought and received workers' compensation benefits as a result of this injury.
 {¶ 2} Thereafter, Appellants filed suit in the Mahoning County Court of Common Pleas against the City and Moody. Switka alleged that Moody intentionally kicked him in the ankle and that the City permitted and knew of the repeated on-the-job physical horseplay by its street department employees, including Moody. Thus, Switka claimed that Moody was liable for his injury and for his wife's loss of consortium. Appellants asserted claims against Moody for assault and battery, negligence, and the intentional and/or negligent infliction of emotional distress.
 {¶ 3} Appellants claimed that the City of Youngstown was responsible for the intentional and/or negligent acts of its agent/employee, Moody, via respondeat superior and that the City was also responsible based on its negligent hiring and/or retention of Moody. Appellants also raised an employer intentional tort claiming that the City was responsible because it subjected Switka to a dangerous condition, i.e., employee Moody.
 {¶ 4} Following discovery, the trial court granted Appellees summary judgment as a matter of law on April 4, 2005. Appellants timely appealed to this Court and assert four assignments of error. For the following reasons, however, Appellants' claims are barred since Switka's sole method of recovery was workers' compensation.
 {¶ 5} We will address Appellants' fourth assignment of error first since it deals with evidentiary issues raised before the trial court granted summary judgment. In this assignment Appellants claim:
 {¶ 6} "The Court erred by failing to resolve evidentiary motions prior to ruling on the motions for summary judgment."
 {¶ 7} According to Appellants, there were unresolved evidentiary issues pending at the time the motions for summary judgment were granted. Specifically, the City objected to Appellants' use of an uncertified copy of its accident investigation report and an unauthenticated copy of a witness statement made by Patrick Minenok. These documents were attached to Appellants' responsive motion. The City brought this to the court's attention in its supplemental memorandum in support of its motion for summary judgment.
 {¶ 8} Civ.R. 56(C) identifies the kind of evidence that may be considered in a motion for summary judgment. The court is to consider only, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." Civ.R. 56(C). Any doubts must be resolved in favor of the nonmoving party. Viockv. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12,467 N.E.2d 1378. Properly considered evidence also includes evidence not specifically authorized by Civ.R. 56(C) if it is incorporated by reference through an affidavit pursuant to Civ.R. 56(E).Skidmore Assoc. Co. v. Southerland (1993),89 Ohio App.3d 177, 179, 623 N.E.2d 1259.
 {¶ 9} In response to the City's motion, Appellants filed a responsive motion with Patrick Minenok's affidavit attached. Minenok authenticated his witness statement, which was attached to his affidavit.
 {¶ 10} Appellants argue on appeal that this evidentiary issue, i.e., the admissibility of the investigative report and Minenok's statement, should have been considered and decided before the court granted summary judgment.
 {¶ 11} However, motions not ruled on prior to a trial court rendering a final judgment are deemed overruled upon the issuance of that final judgment. Roszak et al., v. Princess Cruises,Inc. (1993), 90 Ohio App.3d 109, fn 1, 628 N.E.2d 77; Solon v.Solon Baptist Temple, Inc. (1982), 8 Ohio App.3d 347,457 N.E.2d 858; Frieden v. Frieden (June 14, 1990), Cuyahoga App. No. 57032. Accordingly, the City's request was implicitly overruled.
 {¶ 12} In addition, Appellants cured the problem with its exhibits, in part, since Minenok's statement was subsequently authenticated in his affidavit. The investigative report, however, was never authenticated. Thus, it should not have been considered by the trial court. Civ.R. 56(C). It is not evident whether the trial court considered this report in rendering its summary judgment decision.
 {¶ 13} We will consider Minenok's affidavit and statement attached thereto in our de novo review because it was properly submitted before the trial court rendered its decision; we may not consider the investigative report since it was never authenticated. Civ.R. 56(E).
 {¶ 14} Either way, however, this issue is not outcome determinative on appeal. Thus, this claimed error lacks merit and is overruled.
 {¶ 15} Appellants' first assignment of error asserts:
 {¶ 16} "The Court Erred in Granting the City of Youngstown's Motion for Summary Judgment Because the City of Youngstown's Workers' Compensation Preclusion Defense Fails."
 {¶ 17} Since this case was decided on summary judgment, we review the matter de novo, governed by the standard set forth in Civ.R. 56. Albain v. Flower Hosp. (1990), 50 Ohio St.3d 251,553 N.E.2d 1038.
 {¶ 18} The Supreme Court of Ohio has explained the burden shifting procedure for making summary judgment determinations.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Initially, the moving party must identify evidentiary materials showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Then, if the moving party meets this burden, a burden is placed on the nonmoving party to demonstrate that there is a genuine issue of fact for trial. Id. Civ.R. 56(E).
 {¶ 19} As set forth previously, Switka was injured during his employment with the City of Youngstown. It is undisputed that Switka was injured while in the City's garage during his employment with the street department. It is also undisputed that Switka's ankle was injured by Elias Moody. Further, Switka sought and received workers' compensation benefits from the City as a result of this injury. The City did not dispute his claim.
 {¶ 20} In its summary judgment motion, the City of Youngstown argued that it was immune from liability pursuant to R.C. §4123.74 and § 2744.02. Moody also claimed immunity.
 {¶ 21} When a party utilizes an immunity defense to support a motion for summary judgment, they, "must present evidence tending to prove the underlying facts upon which the defense is based."Hall v. Ft. Frye Loc. School Dist. Bd. of Edn. (1996),111 Ohio App.3d 690, 695, 676 N.E.2d 1241, citing Evans v. S. Ohio Med.Ctr. (1995), 103 Ohio App.3d 250, 255, 659 N.E.2d 326. Thereafter, the nonmoving party must present evidence showing the existence of a genuine issue of material fact.
 {¶ 22} Every employee who is injured or contracts an occupational disease in the course of employment is entitled to receive compensation under R.C. § 4123.54. Courts must liberally construe the workers' compensation laws in favor of employees. R.C. § 4123.95; Bailey v. Republic Engineered Steels, Inc.
(2001), 91 Ohio St.3d 38, 40, 741 N.E.2d 121.
 {¶ 23} R.C. § 4123.74 provides,
 {¶ 24} "Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury * * * received * * * by any employee in the course of or arising out of his employment * * *."
 {¶ 25} Further, R.C. § 4123.741 provides for a co-employee's immunity for most on-the-job injuries for which the injured employee receives workers' compensation benefits,
 {¶ 26} "No employee * * * shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, * * * on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."
 {¶ 27} Turning to the case at hand, we have three pieces of evidence before us in reviewing this matter de novo: the affidavit and statement of Patrick Minenok and the depositions of Richard Switka and Elias Moody. This evidence unequivocally reflects that Moody was engaged in horseplay with another city employee, Munta Mohammed, when Switka was injured. Mohammed was chasing Moody through the garage, and Moody ran into Switka. Switka was sitting in a chair with his eyes closed and his legs stretched out in front of him. Switka's leg was injured in the encounter. Moody wholly denies intentionally kicking Switka. (Moody Depo., pp. 22-23.)
 {¶ 28} Switka confirmed that he had his eyes shut at the time of his injury; thus, he did not see whether his injury was an accident or the result of an intentional act. Further, no one told him that Moody kicked him on purpose. (Switka Depo., pp. 74, 95.)
 {¶ 29} Notwithstanding all of the evidence, including his own, Switka argues that Moody intentionally kicked him. This argument is based solely on Minenok's witness statement, which provides in its entirety: "On Wed. 10/30/02 while sitting out by the time clock, I witnessed Elias Moody kick Richard Switka in his foot. It was done in a playful manner but apparently Elias hit Richard's bad foot." (Minenok Affidavit, Exh. A.)
 {¶ 30} Although Switka's injury may not have directly arisen in the course of his job duties with the street department, Switka sought and received workers' compensation benefits as a result of his injury. The City did not dispute his claim. (Switka Depo., p. 95.) There is no dispute in the instant case that Switka and Moody were co-employees at the time of the accident. It is also undisputed that the Bureau of Workers' Compensation found the injury to be compensable.
 {¶ 31} Thus, the fact that Switka received benefits acts as a bar to a claim for damages for injuries negligently inflicted by a co-employee. Jones v. VIP Development Co. (1984),15 Ohio St.3d 90, 99, 472 N.E.2d 1046; Kaiser v. Strall (1983),5 Ohio St.3d 91, 93, 449 N.E.2d 1; Kelbley v. Hurley (1994),94 Ohio App.3d 409, 414, 640 N.E.2d 1173. "An injury need only be found `compensable' for fellow-employee immunity to be activated."Kaiser, supra, at 93.
 {¶ 32} Based on the foregoing, the bureau's determination that the injury in this case occurred during the course of Switka's employment must be honored and act as a bar to Appellants' claims based in negligence. Kaiser, supra, at 93. Accordingly, Moody and the City are immune from Appellants' claims under R.C. §§ 4123.74 and 4123.741.
 {¶ 33} However, this immunity does not extend to intentional torts, which by definition do not arise in the course of one's employment. Brady v. Safety-Kleen (1991), 61 Ohio St.3d 624,576 N.E.2d 722, paragraph one of the syllabus.
 {¶ 34} In order to establish an intentional tort, Switka must prove that the act was, "committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." Jones, 15 Ohio St.3d 90,472 N.E.2d 1046, paragraph one of the syllabus.
 {¶ 35} Appellants argue that Moody intentionally kicked Switka. Their intentional tort argument is based solely on Minenok's witness statement in which he stated that he saw Moody kick Switka in a "playful manner." (Minenok Affidavit, Exh. A.)
 {¶ 36} Contrary to Appellants' claims, however, Minenok's description of the kick as "playful" clearly does not support an intentional tort claim since a kick described as playful does not connote intent to injure. Further, there is nothing in the trial court's record tending to establish that Moody had knowledge that Switka's injury was substantially certain to occur.
 {¶ 37} Based on the foregoing, there is no evidence in the record supporting an intentional tort. As such, Appellants' intentional tort claim against Moody lacks merit.
 {¶ 38} Appellants also make an intentional tort allegation against the City. Appellants alleged that the City subjected Switka to a dangerous condition, i.e., Moody. Appellants allege that Moody was dangerous based on his violent tendencies and his repeated on-the-job horseplay.
 {¶ 39} In order to establish a successful employer intentional tort action, an employee must establish:
 {¶ 40} "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115,570 N.E.2d 1108, paragraph one of the syllabus.
 {¶ 41} In determining whether an employer's conduct is egregious enough to constitute an intentional tort, courts must refrain from construing intentional torts too broadly. VanFossen v. Babcock Wilcox Company (1988), 36 Ohio St.3d 100,116-117, 522 N.E.2d 489.
 {¶ 42} Appellants argue that the City had reason to know of Moody's history of violence, and that Switka was subjected to Moody's violent propensity as a condition of his employment with the City. In support of this argument, Appellants attempt to raise Moody's past history of violence and other bad conduct.
 {¶ 43} Moody's deposition testimony does reflect that he had been previously charged with felonious assault. However, this incident was not work related. It involved Moody's tenant's failure to pay rent. Moody also had a ten-year-old accusation of domestic violence. This incident was also unrelated to his employment. Further, Moody evidently was not convicted of either of these charges. (Moody Depo., pp. 15-17.) Accordingly, these charges are of no consequence to the instant matter.
 {¶ 44} However, Moody did admit to verbally threatening a co-worker because the co-worker owed him money. Moody denied this co-worker's accusation that Moody pulled a gun on him at the City's street department. (Moody Depo., pp. 28-29.) There is no other evidence on this issue.
 {¶ 45} Notwithstanding, Moody readily admits to his repeated on-the-job horseplay, which included wrestling with other employees and throwing water. In fact, Moody testified that his street department foremen witnessed his wrestling but they, "let it slide[.]" Although he knew horseplay was against work rules, the rules were not enforced. Moody recalls being disciplined once at work for his horseplay prior to this incident. (Moody Depo., pp. 10, 18-20, 57.)
 {¶ 46} Moody also stated that Switka never complained about his or other's job-time horseplay. (Moody Depo., p. 53.)
 {¶ 47} Switka's deposition testimony is much the same as Moody's. While Switka witnessed Moody's constant horseplay at work, he did not know if Moody had ever been "written up" for his conduct before this incident. Switka also indicated that such horseplay was against street department rules; however, he felt that these rules were a "big joke." (Switka Depo., pp. 32, 38.)
 {¶ 48} Switka described one act of horseplay that he witnessed during which Moody pushed a co-worker into another City employee. One employee was injured as a result. Switka told the street department foreman about the incident. However, all of the individuals allegedly involved in this incident denied that it occurred as a result of Moody's horseplay. This was the only time that Switka talked with anyone at the City about disciplining Moody's behavior. (Switka Depo., pp. 39, 45.)
 {¶ 49} Switka also attempted to testify about incidents demonstrating Moody's alleged violent propensities. However, Switka had no direct knowledge of these incidents. His testimony on this issue was purely hearsay.
 {¶ 50} Based on the foregoing, and assuming for argument's sake that an employee's repeated on-the-job horseplay can constitute an employer intentional tort, Appellant's claim lacks merit. There was no evidence establishing that Moody created a dangerous condition at the City of Youngstown's Street Department and there was a lack of evidence tending to establish that the City knew that a co-worker was substantially certain to be injured by Moody's antics. Fyffe, 59 Ohio St.3d 115,570 N.E.2d 1108, paragraph one of the syllabus. Thus, Appellants' intentional tort claims against the City lack merit.
 {¶ 51} Accordingly, Appellants' claims lack merit in their entirety since both the City and Moody are entitled to workers' compensation immunity and Appellants have failed to set forth evidence in support of their intentional tort claims. R.C. §§4123.74 and 4123.741. As such, Appellees are entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 52} Appellants' second and third assignments of error address the issue of political subdivision immunity. These assignments claim:
 {¶ 53} "The Court Erred in Granting the City of Youngstown's Motion for Summary Judgment Because the City of Youngstown's Governmental immunity defense fails."
 {¶ 54} "The Trial Court Erred by Granting Defendant Elias Moody's Motion for Summary Judgment as Moody's Governmental immunity claim fails."
 {¶ 55} Since Appellees are entitled to workers' compensation immunity, these alleged errors are moot and will not be addressed herein. App.R. 12(A)(1)(c).
 {¶ 56} In conclusion, the trial court's award of summary judgment was appropriate. Both the City of Youngstown and Moody were entitled to workers' compensation immunity. R.C. §§ 4123.74
and 4123.741. Appellants' sole method of recovery was workers' compensation. Accordingly, we hereby affirm the trial court's decision in full.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.