OPINION
{¶ 1} Appellants, Ilija and Ljubica Drazetic, appeal from the January 26, 2005 judgment entry of the Lake County Court of Common Pleas, granting the motion for summary judgment of appellee, Coe Manufacturing Company.
 {¶ 2} On February 27, 2004, appellants filed a complaint against appellee alleging an intentional tort resulting from a work-related injury to appellant Ilija Drazetic.[1] On May 3, 2004, appellee filed an answer. Appellee filed a motion for summary judgment pursuant to Civ.R. 56(B) on December 20, 2004. Appellants filed a brief in opposition to appellee's motion for summary judgment on January 14, 2005. On January 19, 2005, appellee filed a motion to strike appellants' brief in opposition, which was denied by the trial court. Appellee's reply brief was filed on January 21, 2005.
 {¶ 3} Appellee manufactures large-scale, custom machines used by lumber mills in the production of wood products, and is headquartered in Painesville, Lake County, Ohio. Appellant Ilija Drazetic began his employment with appellee in September 1999, and was classified as a "Machinist A," the highest grade in the plant. As a "Machinist A," he was qualified to operate all of the machines used at appellee's plant.
 {¶ 4} In his deposition, appellant Ilija Drazetic testified that he became employed in the manufacturing industry and had worked with machines since 1968. About four years before his employment with appellee, appellant Ilija Drazetic worked as a machine operator on big lathes. During the course of his employment with appellee, he was laid off and recalled a number of times. At some point in 2002, while appellant Ilija Drazetic was laid off, the lathe that he had previously operated was replaced by a Martin lathe. Before his layoff in September 2002, appellant Ilija Drazetic indicated that he had worked on the Martin lathe and was instructed on how to use it by his co-worker, Curtis Stewart ("Stewart").
 {¶ 5} When he returned on January 7, 2003, appellant Ilija Drazetic was one of the operators of the Martin lathe, and said that he felt comfortable operating the machine. However, he stated that he complained about the clutch not working to Stewart, as well as to his supervisors, Martin Carney ("Carney"), and Peter Volk ("Volk"), but could not remember when he told them. Appellant Ilija Drazetic said that maintenance came to fix the Martin lathe, but found nothing wrong with it. He indicated that the Martin lathe was not that efficient since the clutch did not work, but he did not consider it unsafe until after his accident. Despite his allegation that he told his supervisors about the problems with the clutch, he continued to use the machine. Appellant Ilija Drazetic never complained to the Joint Safety Committee.
 {¶ 6} On February 28, 2003, about ten to fifteen minutes before his shift began at 7:30 a.m., appellant Ilija Drazetic was injured while operating the Martin lathe. He lost his index finger on his left hand, as well as his ring finger on his right hand. There were no witnesses present who saw what had happened. According to appellant Ilija Drazetic, he inspected the column which he had been threading the previous day. The lathe was not running, but it had been left in gear. He placed an Allen wrench in the chuck of the lathe and with both hands, pulled the wrench upward to turn the chuck clockwise. While appellant Ilija Drazetic began to make a second turn of the chuck, he indicated that the engine started and the chuck began turning counterclockwise, trapping his fingers between the Allen wrench and the side of the lathe. He testified that he did not know why the lathe began to run.
 {¶ 7} Although he was supposed to put the safety latch on to avoid accidental start-up, appellant Ilija Drazetic indicated that it was not his practice to turn on the switch. He maintained that it was unlikely that he had engaged the safety latch on the stop button on the date of his injury. After his injury, appellant Ilija Drazetic returned to work at appellee for a couple of months before being laid off again in January 2004. He stated that he was looking for another job as a machinist, possibly working again with a lathe machine.
 {¶ 8} According to Carney's deposition, he began working for appellee in 1986, and was classified as a "Machinist A." He was promoted to a supervisory position in 1998. Carney testified that he was unaware that there was a problem with the clutch not disengaging on the Martin lathe before appellant Ilija Drazetic was injured. He indicated that if he had been told that the clutch did not disengage, he would have definitely shut the machine down and had it fixed.
 {¶ 9} Volk indicated in his deposition that he was hired by appellee around 1984 or 1985 as a supervisor and was a manufacturing manager at the time of the incident. He stated that appellant Ilija Drazetic operated several different types of machines. Volk opined that appellant Ilija Drazetic was a conscientious employee but that he always appeared to be nervous, lacked confidence, and was not competent. Volk did not learn about the problems with the clutch until after appellant Ilija Drazetic's accident. If he would have known sooner, Volk said that he would have immediately had maintenance fix the problems. He testified that appellant Ilija Drazetic should have been the most familiar of any employee with the Martin lathe. Volk stressed that safety has always been taken seriously and a major accident never occurred prior to the incident at issue. He did not believe that the Martin lathe was a dangerous machine except for the fact of how it was operated by appellant Ilija Drazetic.
 {¶ 10} According to Stewart's deposition, he was employed by appellee as a machinist for over sixteen years. He trained appellant Ilija Drazetic to work the Martin lathe and stated that it was simple to operate. Stewart believed that appellant Ilija Drazetic knew what he was doing with respect to operating the Martin lathe. He maintained that it was inappropriate, as well as dangerous, to roll a chuck with a wrench in it. Stewart told appellant Ilija Drazetic not to put the Martin lathe in neutral. Stewart stated that Carney, Volk, and appellant Ilija Drazetic were aware that the clutch did not function properly with respect to the fact that it would not disengage. He knew that it was a very serious problem which could make it dangerous. However, Stewart did not consider the clutch not disengaging a safety issue, but rather an inconvenience. The proper way to operate the machine was to use the stop and start switch. A manual clip was on the Martin lathe to avoid accidental start-up. He did not worry that the machine would accidentally start because he always used the safety clip. If Stewart thought that the Martin lathe created a substantial risk of injury, he would have refused to operate it.
 {¶ 11} Pursuant to its January 26, 2005 judgment entry, the trial court granted appellee's motion for summary judgment. It is from that judgment that appellants filed a timely notice of appeal and make the following assignment of error:
 {¶ 12} "The trial court erred to the prejudice of [appellants] in granting [appellee's] motion for summary judgment."
 {¶ 13} In their sole assignment of error, appellants argue that the trial court erred in granting appellee's motion for summary judgment, and present four issues for review. In their first issue, appellants contend that the evidence presented contains genuine issues of material fact which are in dispute. In their second issue, appellants allege that genuine issues of material fact exist regarding whether appellee had knowledge of the existence of a dangerous process, procedure, instrumentality, or conditions within its business operation. In their third issue, appellants maintain that genuine issues of material fact exist as to whether appellee had knowledge that appellant Ilija Drazetic was subjected by his employment to such dangerous process, procedure, instrumentality, or condition, that harm to him would be a substantial certainty. Lastly, in their fourth issue, appellants stress that genuine issues of material fact exist with respect to whether appellee required appellant Ilija Drazetic to continue to operate the dangerous, defective machine and to continue to perform a dangerous task.
 {¶ 14} Because appellants' four issues are interrelated, we will address them in a consolidated manner.
 {¶ 15} In order for a summary judgment to be granted, the moving party must prove: "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 16} The Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296: "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record whichdemonstrate the absence of a genuine issue of fact on a materialelement of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic).
 {¶ 17} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. TheBrown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 18} This court stated in Renner v. East Mfg. Corp., 11th Dist. No. 2001-P0-135, 2002-Ohio-6691, at ¶ 20, quoting Gibsonv. Drainage Prods., Inc., 95 Ohio St.3d 171, 2002-Ohio-2008, at ¶ 16, that "`in order to establish a claim of employer intentional tort, an employee must demonstrate all of the following: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.'" "The proof necessary to establish `intent' on the part of an employer is beyond that proof required for negligence and recklessness." Renner, supra, at ¶ 20, citing Hannah v. DaytonPower Light Co. (1998), 82 Ohio St.3d 482, 484. "The mere knowledge and appreciation of a risk, something short of substantial certainty, is not intent." Renner, supra, at ¶ 20, citing Gibson, supra, at ¶ 17. Courts must judge cases involving workplace intentional torts on the totality of the circumstances surrounding each incident. Gibson at ¶ 27.
 {¶ 19} A foreseeable risk is a risk that is substantially certain to occur. Fleck v. Snyder Brick Block (Mar. 16, 2001), 2d Dist No. 18368, 2001 Ohio App. LEXIS 1197, at 6. "Indeed, the [Fyffe] factors operate to impose a foreseeability test. They require proof that the instrumentality, process, or condition that was the agency of the employee's injury subjected the employee to a risk that the form of harm which in fact resulted was almost certain to occur * * *." Id.
 {¶ 20} Under the first prong of Fyffe, an employee must demonstrate that the employer had knowledge of the existence of the dangerous process or condition within its business operation.Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, 118.
 {¶ 21} In the instant matter, appellants satisfy the first prong of Fyffe. Again, appellant Ilija Drazetic indicated that he complained about the clutch not working to Stewart as well as to his supervisors, Carney and Volk. Also, Stewart testified in his deposition that he told appellee's supervisors, Carney and Volk, before appellant Ilija Drazetic's injury, that the clutch on the Martin lathe did not function properly with respect to the fact that it would not disengage. Stewart indicated that the defective clutch was a very serious problem which could make the machine dangerous to use. Carney and Volk, however, stated in their depositions that they did not learn about the problems with the clutch until after appellant Ilija Drazetic's accident. Carney and Volk testified that if they would have known of the defective clutch, they would have immediately had it fixed. The record clearly shows that there is a genuine issue of material fact as to the first element of Fyffe.
 {¶ 22} Under the second prong of Fyffe, an employee is required to set forth facts showing that the employer had knowledge that if the employee was subjected by his employment to the dangerous condition, then harm to the employee would be a substantial certainty. Id. at 118. The absence of prior accidents strongly suggests a lack of knowledge by an employer that injury from a particular procedure or process was substantially certain to occur. Foust v. Magnum Restaurants, Inc. (1994),97 Ohio App.3d 451, 455.
 {¶ 23} In the case sub judice, again, appellant Ilija Drazetic was classified as a "Machinist A," the highest grade in the plant, had worked with machines since 1968, and used the Martin lathe since at least 2002. Appellant Ilija Drazetic testified that he felt comfortable operating the Martin lathe; did not consider the machine unsafe until after his accident; was supposed to put the safety latch on to avoid accidental start-up but that it was not his practice to do so; if the switch was put on, the Martin lathe could not accidentally start; and that it was unlikely that he had engaged the safety latch on the date of his injury.
 {¶ 24} Also, according to Stewart, he trained appellant Ilija Drazetic to work the Martin lathe; stated that it was simple to operate; believed that appellant Ilija Drazetic knew what he was doing with respect to operating the machine; did not consider the clutch not disengaging a safety issue but rather an inconvenience; said that the proper way to operate the Martin lathe was to use the stop and start switch and that a manual clip was on the machine to avoid accidental start-up; and indicated that if he thought that the Martin lathe created a substantial risk of injury, he would have refused to operate it. On the other hand, we reiterate that he stated that the defective clutch could make the machine dangerous to use.
 {¶ 25} Volk testified that appellant Ilija Drazetic should have been the most familiar of any employee with the Martin lathe and did not believe that the machine was dangerous. However, we stress that Volk opined that appellant always appeared to be nervous, lacked confidence, and was not competent.
 {¶ 26} Although there is no evidence that any employee had previously been injured on the Martin lathe caused by the machine's inadvertent start-up, the record establishes that there is certainly a genuine issue of material fact as to whether the conditions in which appellant Ilija Drazetic was working created such an obvious danger that appellee knew an injury was substantially certain to occur.[2] Pursuant to Volk's deposition testimony that appellant Ilija Drazetic was not competent, a genuine issue of material fact exists regarding whether the risk of the harm that occurred was foreseeable to appellee, based on Fleck, supra. Appellants satisfy the second prong of Fyffe.
 {¶ 27} Under the third prong of Fyffe, the employer does not have to expressly order the employee to engage in the dangerous task which led to his injury. Gibson, supra, at ¶ 23, citing Hannah, supra, at 487. Instead, "in an action alleging workplace intentional tort, in order to overcome a motion for summary judgment, an opposing party can satisfy this [third] requirement by presenting evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in the dangerous task." Id.
 {¶ 28} The Supreme Court stated in Gibson that "[w]hether [the employee] was specifically requested to participate or was actually participating in [the operation] is not relevant to determining whether [the employee] was required to perform a dangerous task. Rather, the primary concern is whether [the employer], through its policies and conditions of employment, placed [the employee] in a position where he was subjected to a `dangerous process, procedure, instrumentality or condition' and harm was substantially certain to follow." Gibson at ¶ 27.
 {¶ 29} In the case at bar, as previously discussed, some of the evidence presented suggests that appellee, through its actions and policies, required appellant Ilija Drazetic to engage in a dangerous task. Pursuant to Gibson, a genuine issue of material fact exists with respect to whether appellee caused, created, or placed appellant Ilija Drazetic in a position where he was subjected to a dangerous environment in which harm was substantially certain to follow. Therefore, appellants satisfy the third prong of Fyffe.
 {¶ 30} Appellants' issues have merit. We conclude that appellants presented sufficient evidence to satisfy each of the three requirements under Fyffe. The facts of this case raise questions best suited for a jury's determination.
 {¶ 31} For the foregoing reasons, appellants' sole assignment of error is well-taken. The judgment of the Lake County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with this opinion.
O'Neill, J., O'Toole, J., concur.
[1] Appellant Ilija Drazetic's wife, appellant Ljubica Drazetic, also brought a loss of consortium claim against appellee.
[2] In their brief, appellants refer to the report of their expert, Gerald Rennell, who opined that the injury to appellant Ilija Drazetic was substantially certain to occur. We note that in the trial court, appellee filed a motion to exclude the report on the grounds that it was not provided until after the discovery cut-off date. The trial court did not rule on the motion.