OPINION
{¶ 1} Appellant, Stephen Richardson, appeals the summary judgment entered by the Ashtabula County Common Pleas Court in favor of his employer appellee, Welded Tubes, Inc. At issue is whether a fact question was presented concerning whether appellee knew with substantial certainty that appellant's trip and fall injury would occur at its business operation. For the reasons that follow, we affirm.
 {¶ 2} Appellant began working for appellee at its plant in Orwell, Ohio in January, 2001. In July, 2001, he was assigned to the steel room as a slitter helper. In *Page 2 
that capacity, appellant unloaded coils of steel from trucks and moved coils to different locations in the steel room by using an overhead crane. The crane is operated by a handheld control panel, which appellant would operate as he walked in the steel room.
 {¶ 3} On September 15, 2004, at about 6:30 a.m., appellant was in the process of moving coils in the steel room. Using the control panel, appellant picked up a coil and as he was walking in the center of the steel room, his left foot stepped into a slight gap between a grate and its base plate and he twisted his left knee.
 {¶ 4} The grate was two feet by one and one-half feet, and had slits in it for drainage into the drain under it. The grate sits inside the base plate. A depression in the center of the grate, which was about one inch deep, caused the gap between the grate and the base plate. The grate was also broken in two pieces, but appellant does not assert this break contributed to his accident .
 {¶ 5} After appellant twisted his knee, he put the coil down and told his supervisor he could not stand. One of his co-workers drove him to the emergency room of nearby St. Joseph's Hospital.
 {¶ 6} Appellant said the grate had been in this condition since he started working for appellee in January, 2001. He had worked in the steel room for more than three years, and he had never stepped on the grate before. Appellant testified that he "wouldn't have to walk over that grate in order to move the coils," and that on September 15, 2004, he "wouldn't have had to step where he stepped[.] * * * [He] could have stepped to either side of it." He testified that when he moved coils, he was not required to walk in any specific area. *Page 3 
 {¶ 7} Appellant testified he "could see the grate in the floor, nothing blocked
[his] view of it if [he] had looked down[.]" He further testified:
 {¶ 8} "Q. You knew it was there?
 {¶ 9} "A. Right.
 {¶ 10} "Q. You could see that it was there?
 {¶ 11} "A. Right.
 {¶ 12} "Q. You could walk around it if you wanted to?
 {¶ 13} "A. Right. * * *
 {¶ 14} "Q. You never purposely walked on it in the past?
 {¶ 15} "A. No.
 {¶ 16} "Q. And that day, you could have walked around it?
 {¶ 17} "A. Right.
 {¶ 18} "Q. Well, had you ever seen anybody walk over it?
 {¶ 19} "A. Not to my knowledge.
 {¶ 20} "Q. You were not aware of anyone who had ever been injured walking on that grate before, correct?
 {¶ 21} "A. Right.
 {¶ 22} "Q. You had never been injured walking on that grate before?
 {¶ 23} "A. No.
 {¶ 24} "* * *
 {¶ 25} "Q. * * * [Y]ou don't know of anybody who was ever injured by walking on that grate?
 {¶ 26} "A. Right." *Page 4 
 {¶ 27} Appellant testified that he had never notified management about the condition of the grate. He testified:
 {¶ 28} "Q. Why didn't you tell anybody in management about this condition?
 {¶ 29} "A. I was the new guy.
 {¶ 30} "Q. How about a year or two or three years later, July of `04, why didn't you bring this to the attention of management?
 {¶ 31} "A. I don't know."
 {¶ 32} Appellant testified he could have avoided the grate. He testified:
 {¶ 33} "Q. So the easy way to avoid it is to just walk around it?
 {¶ 34} "A. Right.
 {¶ 35} "Q. And there was nothing preventing you from walking around it on the day of your accident?
 {¶ 36} "A. Right."
 {¶ 37} Appellant further testified that as he walks in the steel room operating the overheard crane, he can look up and down.
 {¶ 38} Following his accident, appellant was off work for three months and returned to work in December, 2004. Appellee paid him his full salary while he was off work. A worker's compensation claim was filed on behalf of appellant and the claim was allowed.
 {¶ 39} Timothy Ellsworth, one of appellant's supervisors, testified the grate had sunk down about an inch. He said it had been in this condition for quite a few years, three at most. He said that during this period, he never discussed repairing the drain with the maintenance department because the grate sat neatly in the drain. He said a *Page 5 
floor that is not perfectly level is not necessarily a trip hazard. He said whether a hazard exists depends on the extent of the unlevel condition of the floor. He had seen the grate before appellant's fall, and did not think it was a hazard.
 {¶ 40} Herman Madden was appellee's maintenance manager as well as a member of appellee's safety committee from 2000 to 2002. He testified he believed an accident was likely because a crane operator could step into the bent grate.
 {¶ 41} Madden testified that prior to appellant's accident, during a meeting of the safety committee, which was held in the steel room, he saw two officer workers, who he could not identify, stumble while they were crossing the area of the grate. They did not trip, fall, or injure themselves, nor did anyone report the incident.
 {¶ 42} Madden testified the safety committee never discussed the grate, and he never discussed it with the committee. He said no one other than appellant had ever been injured on the grate. He said that in the past when the grate would become bent from delivery trucks backing in over it, the maintenance department would repair it by bending it back into shape, but that never lasted long. He testified the grate was bent down one inch and, in his opinion, it presented a trip hazard.
 {¶ 43} Madden testified that, while operating the crane, appellant would not have to step on the grate to move coils with the crane. Further, he said that when moving the crane, the employee should look down from time to time to see where he is going.
 {¶ 44} Kevin Barker, appellee's plant manager, testified he is responsible for the company's compliance with OSHA regulations. He testified that after he was hired, he reactivated appellee's safety committee in 2003. He said that prior to September 15, 2004, no one ever reported the bent grate and he was unaware of it. *Page 6 
 {¶ 45} Shirley Walters, appellee's quality specialist from 2000 to 2005, testified that a grate bent one inch would be a trip hazard to a crane operator.
 {¶ 46} Timothy Gregory, a 29-year maintenance employee, testified that about one year before appellant's accident, he saw the grate in the drain was broken in two pieces. He filled out a maintenance request form, and the maintenance department repaired the grate by installing a new one with a heavier gauge steel. Gregory testified that in 2003, the grate was not bowed enough that he thought it was a trip hazard.
 {¶ 47} Appellant submitted the report of mechanical engineer Richard Hayes, who concluded, without citing any evidence in support, which because appellee failed to repair the drain grate in the steel room, harm to its employees was a substantial certainty.
 {¶ 48} Appellant filed a complaint against appellee on September 11, 2006, alleging employer intentional tort. He alleged he sustained an injury to his left knee when he fell in a crevice caused by the grate. Appellee timely filed an answer denying the material allegations of the complaint. On May 29, 2007, appellee filed a motion for summary judgment. On July 10, 2007, appellant filed a brief in opposition and a cross-motion for summary judgment on the issue of liability. On August 6, 2007, appellee filed a reply brief and a brief in opposition to appellant's cross-motion.
 {¶ 49} On August 31, 2007, the trial court entered its judgment granting appellee's motion for summary judgment and denying appellant's cross-motion. Appellant appeals the trial court's summary judgment, and asserts the following as his sole assignment of error: *Page 7 
 {¶ 50} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE."
 {¶ 51} Pursuant to Civ. R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 52} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. The movant must point to some evidence in the record of the type listed in Civ. R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ. R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 53} Appellate review of a trial court's entry of summary judgment is de novo, applying the same standard used by the trial court.McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. *Page 8 
 {¶ 54} The parties stipulate on appeal, and, based on our review of the legislative history, we hold that, because appellant's injury occurred on September 15, 2004, this cause is governed by Fyffe v.Jeno's, Inc. (1991), 59 Ohio St.3d 115, rather than R.C. 2745.01(B).
 {¶ 55} The remedy provided under Ohio's workers' compensation laws was made the exclusive remedy for workplace injury available to employees by the amendment to Article II, Section 35 of the Ohio Constitution in 1924. It granted immunity to complying employers from any common-law actions for injuries suffered by employees in the workplace.
 {¶ 56} Thus, in general, an employee's only recourse for a workplace injury is through the workers' compensation system. In Blankenship v.Cincinnati Milacron Chemicals, Inc. (1982), 69 Ohio St.2d 608, the Supreme Court of Ohio first recognized the intentional tort exception to the workers' compensation exclusivity doctrine by allowing employees to bring an intentional tort claim against their employers. This narrow exception exists when an employer's conduct is sufficiently "egregious" to constitute an intentional tort. Sanek v. Duracote Corp. (1989),43 Ohio St.3d 169, 172. The Court defined the term "intentional tort" inJones v. VIP Development Co. (1984), 15 Ohio St.3d 90, as "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." Id. at paragraph one of the syllabus. In the context of employer intentional torts, "intent" focuses primarily on whether an employer is substantially certain a particular condition will cause injury to an employee. Id. Subsequent to the Supreme Court's holding inJones, supra, the Court *Page 9 
commented on the failure of trial courts to properly apply its holding in that case. In Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100, the Court noted:
 {¶ 57} "Subsequent to the majority of this court's determining inJones that an intentional tort should be measured by the yardstick of `substantially certain to occur,' trial courts have been led to misconstrue such phrase, transforming negligence cases into intentional tort cases. Claims in a number of cases have been based upon injuries caused by some degree of negligence on the part of the employer. These have ranged from simple negligence to reckless and wanton disregard of the duty to protect the health and safety of employees, none of which presents an act which is substantially certain to occasion injury." Id. at 115.
 {¶ 58} In Van Fossen, supra, a set of steps had been designed and welded to the rear of a machine on which Van Fossen was working by one of his co-workers. While backing down these steps, Van Fossen slipped and fell backwards incurring serious injuries. The Supreme Court upheld the trial court's grant of summary judgment to the employer, holding that knowledge and appreciation of a risk — something short of substantial certainty — is not intent. Id. at paragraph six of the syllabus. The Court observed:
 {¶ 59} "* * * [T]here was absolutely no evidence of other incidents tending to show that the facility was a dangerous instrumentality. * * * Further, there was no evidence that the employer had mandated that the employees * * * use the steps to go up to or down from the equipment. Lastly, there was no evidence that the employer, knowing all the above, also knew that directing the employee to move up and down the steps would, with a substantial certainty, cause the injuries which in fact resulted. The facts *Page 10 
were visibly and statistically clear that the employee was injured by accidentally slipping and falling while descending steps which had not been designed or installed by the employer." Id. at 118.
 {¶ 60} The Supreme Court held the threshold for establishing intentional tort is very high in light of the exclusivity of the workers' compensation system:
 {¶ 61} "There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an `intentional tort' * * *." Id. at 117.
 {¶ 62} The test for an employer intentional tort was set forth inFyffe, supra, in which the Court identified three elements an employee must prove: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id. at paragraph one of the syllabus. To withstand a motion for summary judgment, the employee must set forth specific facts that raise a genuine issue as to each element of the Fyffe three-prong test. Van Fossen, supra, at paragraph seven of the syllabus.
 {¶ 63} The Court in Fyffe explained this test as follows: *Page 11 
 {¶ 64} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk-something short of substantial certainty — is not intent." Fyffe, supra, at paragraph two of the syllabus.
 {¶ 65} Thus, an employer intentional tort claim requires proof beyond that required to establish negligence, gross negligence, recklessness, or even wanton conduct. Mere knowledge and appreciation of a risk is not intent.
 {¶ 66} Several Ohio Appellate Districts have affirmed summary judgment in the context of trip and falls in the workplace, holding that evidence of substantial certainty was lacking. In Williams v. Advance EngineeringSolutions, Inc., 12th Dist. No. CA 2004-06-078, 2005-Ohio-3910, the employer used masonite boards to cover the floor of its building. Over time the boards curled at the edges, and the plaintiff-employee tripped over the curled edge of one of these boards and fell while carrying garbage out of the room. The Twelfth Appellate District held that because the plaintiff had complained at monthly meetings at which supervisors were present about the potential danger of the curling boards, there was a genuine issue of fact as to whether the *Page 12 
employer knew of a dangerous condition. However, the court held there was no genuine issue as to the second element of the Fyffe test. While the plaintiff said he had previously tripped on the masonite, he had never actually fallen. Another employee had tripped on the masonite, but had not fallen. A third employee had a prior trip and fall, but was not hurt. The appellate court held: "While the lack of a prior accident alone does not equate to a finding that an accident was not substantially certain to occur, it is a fact weighing heavily in favor of such a finding." Id. at ¶ 15. The court held that as a matter of law, the employer did not have knowledge that harm to one of its employees resulting from the curling masonite was a substantial certainty. Id. at ¶ 16. The court held: "While there may be a fact question as to whether [the employer] was negligent in not fixing * * * the masonite flooring, we do not find a fact question as to whether [the employer's] conduct was `egregious' and constituted an intentional tort." Id.
 {¶ 67} In Hristovski v. The Bard Manufacturing Co., 6th Dist. No. WM-03-022, 2004-Ohio-3984, the plaintiff tripped over an air hose laying on the floor of his work station. The factory foreman testified the air hoses could present a trip hazard; however, appellant never complained about the air hoses being a trip hazard and no similar injuries had occurred in the past. The plaintiff's accident investigation expert stated in his report that the employer was substantially certain injury would occur because the air hose positioned on the floor was a safety hazard and that the employer was guilty of OSHA violations. The Sixth Appellate District held: "At most, [the foreman's] deposition testimony indicates an awareness that the air hoses could pose a trip hazard. Mere awareness of such a risk, however, does not raise [the employer's] conduct to the level of an intentional tort." Id. at ¶ 12. The court held the expert's report *Page 13 
did not establish a genuine issue of material fact because it had no evidentiary basis for its legal conclusion. Further, the court held the employer's alleged OSHA violations did not establish a genuine issue of material fact. The court held: "Regarding the alleged OSHA violation, the Supreme Court of Ohio has clearly held: `Congress did not intend OSHA to affect the duties of employers owed to those injured during the course of their employment.' Hernandez v. Martin Chevrolet, Inc. (1995),72 Ohio St.3d 302, 303 * * *. As such, any OSHA violation does not weigh into our consideration of whether [the employer] knew [the plaintiff's] injuries were a substantial certainty. Vermett v. Fred Christen SonsCo. (2000), 138 Ohio App.3d 586, 603 * * *." Id. at ¶ 13.
 {¶ 68} In Marks v. The Goodwill Industries of Akron, Ohio, Inc., 9th Dist. No. 20706, 2002-Ohio-1379, the plaintiff was injured when she fell in the employer's cluttered back room and hit her head on a donated sink. The employer was aware the volume of donations created cluttered conditions, but claimed it maintained clear walkways around and through the donations. The plaintiff argued the cluttered conditions created a risk that employees might fall. The manager testified, "everybody complained" about the cluttered back room and the safety risks presented. A co-worker testified he complained to supervisors about the clutter and warned that "someone's going to fall and get hurt." The plaintiff's co-worker testified that there were clear walkways in the back room, and that employees complained about the presence of clutter, but not about fear that they would trip and fall over it.
 {¶ 69} The Ninth Appellate District held that the employer's awareness of a risk to employees caused by the clutter fell short of establishing a prima facie case of intentionally tortious conduct. Id. at ¶ 27. There was no genuine issue regarding the *Page 14 
employer's knowledge that continuing to work in the back room in spite of the clutter subjected the plaintiff to a substantial certainty of harm. Id. The court noted, "It is also significant that * * * no employee had ever suffered an injury in the back room as a result of the cluttered conditions." Id. at ¶ 28.
 {¶ 70} In Lamb v. Goodyear Tire Rubber Co. (Dec. 16, 1998), 9th Dist. No. 19039, 1998 Ohio App. LEXIS 6124, the plaintiff was injured when he slipped on a silicon lubricant that had leaked onto the floor from a press machine. The plaintiff argued that the plant supervisors' awareness that silicon accumulated on the floor demonstrated the employer was substantially certain that injury would occur. The Ninth Appellate District affirmed summary judgment for the employer, holding that mere knowledge and appreciation of a risk is not intent. The plaintiff had failed to establish his employer knew with substantial certainty such an injury would occur because: 1. the plaintiff had not voiced any concerns and 2. there were no similar injuries over time. SeeFoust v. Magnum Restaurants, Inc. (1994), 97 Ohio App.3d 451, 455
(holding that while evidence of no prior accidents, standing alone, is not conclusive, it strongly suggests that injury from the procedure was not substantially certain to result); see, also, Knott v.Bridgestone/Firestone Tire and Rubber Co. (Sep. 25, 1996), 9th Dist. No. 17829, 1996 Ohio App. LEXIS 4158 (affirming summary judgment in favor of the employer based on the lack of prior accidents from hydraulic lift malfunctioning); see, also, Clark v. Cargill, Inc. (Feb. 12, 1999), 6th Dist. No. L-98-1225, 1999 Ohio App. LEXIS 405 (holding that the lack of prior injuries was a significant factor in determining substantial certainty). *Page 15 
 {¶ 71} From the foregoing decisions of the Sixth, Ninth, and Twelfth Appellate Districts, we glean that, particularly in trip and fall cases in the workplace, the lack of prior injuries weighs heavily against a finding of substantial certainty.
 {¶ 72} Under the first prong of the Fyffe test, appellant was required to present evidence that the employer had knowledge of the existence of a dangerous condition in its workplace.
 {¶ 73} It is undisputed that, while appellant was aware of the location and condition of the grate and could clearly see it on the floor, he never reported its condition to management, even after working in the steel room for three years. Appellant argues on appeal the grate constituted a dangerous condition because he was required to look at the load overhead at all times while operating the crane. However, appellant testified that as he walked in the steel room operating the crane, he could look up and down. Also, maintenance manager Herman Madden testified that when an employee is operating the crane, he should look down from time to time to see where he is going.
 {¶ 74} Appellant argues that trip hazards other than the bent grate in the plant created a genuine issue regarding appellee's knowledge of the existence of a dangerous condition. Because we hold a fact question was presented as to the first prong of the Fyffe test, it is unnecessary for us to rule on this issue. However, the Supreme Court of Ohio has held the plaintiff has the burden to prove the employer had "actual knowledge of the exact dangers which ultimately caused" the injury.Van Fossen, supra, at 112; Sanek, supra, at 172. Further, this court held inDrazetic v. Coe Mfg. Co., 11th Dist. No. 2005-L-035, 2006-Ohio-1688, that the employer must have *Page 16 
knowledge "that injury from a particular procedure or process was substantially certain to occur." (Emphasis added.) Id. at ¶ 22. We also observe that in the complaint, the only dangerous condition alleged by appellant is the grate.
 {¶ 75} Appellant argues the first prong of Fyffe is satisfied with evidence that the condition of the grate was known to management. We agree. Timothy Ellsworth, one of appellant's supervisors, said that the grate was bowed down about an inch, but that he did not think it presented a hazard so he did not ask the maintenance department to repair it. Former maintenance manager Madden testified that while a crane operator would not have to step on the grate while operating the crane, he believed there "was a likelihood of injury" because a crane operator "could step in that bent grate area." He also testified "a bent grate that wasn't level with the floor was a hazard to the crane operator." Appellee's former quality specialist Walters testified the bent grate was a trip hazard. Maintenance worker Gregory testified that one year prior to appellant's accident, Gregory saw the grate was broken, and reported it to his supervisor Dave Waters, who caused it to be repaired.
 {¶ 76} We note that the grate was only bowed down in the center by about one inch, which caused the slight gap between the grate and the base plate into which appellant stepped. Further, the evidence that appellee had knowledge of the existence of a dangerous condition is conflicting and far from persuasive. However, because on summary judgment appellant is entitled to have the evidence viewed most strongly in his favor, we hold there is a genuine issue of material fact as to the first prong of the Fyffe test. *Page 17 
 {¶ 77} Under the second prong, the employee must establish a fact question exists concerning whether the employer had knowledge that if the employee was subjected to the dangerous condition, i.e., the bent grate, harm to the employee would be a substantial certainty. The Supreme Court in Van Fossen, supra, held that the absence of prior accidents is strong evidence of a lack of knowledge on the part of the employer that injury from a particular dangerous condition was substantially certain to occur. In Drazetic, supra, this court held: "The absence of prior accidents strongly suggests a lack of knowledge by an employer that injury from a particular procedure or process was substantially certain to occur." Id. at ¶ 22. Further, as outlined supra, the absence of prior accidents is given great weight in trip and fall cases in the workplace. It is undisputed that neither appellant nor any other employee had ever had a prior trip and fall accident as a result of the bent grate.
 {¶ 78} Contrary to appellant's argument, the report of his expert Richard Hayes does not establish a genuine issue of material fact because Hayes provided no evidentiary basis for his legal conclusion that injury was a substantial certainty. Hristovsky, supra.
 {¶ 79} Further, in support of this prong, appellant points to former maintenance manager Madden's testimony that he believed there was a "likelihood of injury" because a crane operator could step into the bent grate. This testimony merely demonstrates that appellee had knowledge of the risk of injury presented by the bent grate. "However, the mere knowledge and appreciation of a risk * * * is not intent." Fyffe, supra, at paragraph two of the syllabus. *Page 18 
 {¶ 80} Appellant argues the statement of appellee's owner Robert Lewis, allegedly heard by another employee who then repeated it to maintenance manager Madden, that paying OSHA fines was cheaper than providing safety equipment, is evidence of the second Fyffe prong. We do not agree. While appellant argues the statement fits in the admission exception to hearsay, this does not avoid its double hearsay aspect. Second, the comment was allegedly made concerning chains for steel coils, not the subject grate, so even if it was otherwise admissible, it would not be relevant here. The additional comment attributed to the plant manager that government officials were not allowed in the plant without a subpoena is far too vague to be relevant, particularly since the comment was allegedly made regarding county officials who wanted to inspect a new addition to determine whether appellee's property taxes should be increased.
 {¶ 81} Finally, while Madden testified that on one occasion during a safety committee meeting held in the steel room, he saw two unidentified office workers stumble in the area of the grate, they did not trip and fall. He characterized it as a "slight stumble." Moreover, neither of them were injured or reported the incident. Such an unreported incident can hardly impute knowledge to appellee that injury from the grate was a substantial certainty.
 {¶ 82} Appellant's argument that it was "foreseeable that [a crane operator] would step on that drain area" fails to recognize that under the second prong of Fyffe, it is not sufficient that an accident is foreseeable. Even if appellant could show that an accident was foreseeable, i.e., that appellee was negligent, that does not equate to *Page 19 
intent, i.e., knowledge on the part of the employer that injury was a substantial certainty. See Fyffe.
 {¶ 83} Appellant also argues that, sometime prior to 2002, two plant workers "complained about the condition of the grate." However, there is no evidence concerning what was said, and there is no evidence that either worker expressed any concern for safety. See Marks, supra. In any event, while such evidence at most may evidence negligence, it does not create a genuine issue that appellee knew with substantial certainty that injury would occur.
 {¶ 84} Appellant's citation to supervisor Ellsworth's testimony that the grate was bowed down in the center about one inch for up to three years, again, does not create a genuine issue on the secondFyffe prong because he testified the drain "sat neatly" over the drain so he did not think it was a hazard. In any event, while this testimony may be some evidence of negligence or even recklessness, it does not evidence intent.
 {¶ 85} Appellant next argues that appellee never attempted to show it was "seeking to provide a safe working environment in compliance with State and Federal law." While appellee had no duty to make such a generalized showing, we observe that appellee had created a safety committee that met each month and regularly gave seminars to plant employees concerning pertinent safety issues and conducted safety inspections. Further, according to quality specialist Walters, OSHA and the Ashtabula County Safety Council gave appellee a safety award in 2004.
 {¶ 86} Appellant argues that an employer's failure to comply with safety regulations is relevant to an employer's knowledge. Appellant's reliance on Anderson v. Zavarella Bros. Constr. Co. (Dec. 5, 1996), 8th Dist. No. 70657, 1996 Ohio App. LEXIS *Page 20 
5468, is misplaced. In that case the employee was injured when he fell from scaffolding that did not have a guardrail. Evidence was presented that eight years earlier, the employer was cited for a safety violation by the Ohio Industrial Commission as a result of another employee falling from an area that was not protected by a guardrail. Thus, in that case, the prior violation was for the same conduct which caused the injury in Anderson. It is undisputed that, here, appellee was never cited for the violation of any safety regulation arising from the bent grate.
 {¶ 87} Appellant argues his expert Hayes states appellee "failed to adhere to published OSHA safety regulations." However, Hayes does not state in his report that appellee violated any regulation of OSHA or any other governmental agency. He merely states that appellee was aware that "floor holes" were violations of federal and state safety standards. He does not state which standards were violated. Further, appellee had never been cited by any state or federal agency with having a hole in its floor. Appellant's reference to maintenance manager Madden's opinion that appellee was "violating OSHA regulations in numerous aspects of the regulations (sic)" does not evidence appellee's substantial certainty of harm regarding the grate because Madden did not testify what regulations were allegedly violated. Further, since no such regulations are in the record or even cited, we are unable to consider the evidentiary basis, if any, for Madden's opinion.
 {¶ 88} Appellant argues that prior trip and fall accidents in the plant unrelated to the bent grate are relevant to whether appellee had knowledge with substantial certainty that exposure to the bent grate would result in injury. However, as noted supra, the only dangerous condition alleged in the complaint is the bent grate. We fail to see how other *Page 21 
unrelated causes of trip and fall accidents could establish intent. Moreover, appellant has failed to cite any pertinent authority in support of this argument.
 {¶ 89} While there may be some evidence of negligence or even recklessness on the part of appellee, we do not find a fact question as to the second prong of the Fyffe test. Further, because a genuine issue on the second prong is necessary to find the third prong ofFyffe has been met, see, Fyffe, supra, at paragraph one of the syllabus, there is no genuine issue of material fact under the third prong.
 {¶ 90} For the reasons stated in the Opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.
 TIMOTHY P. CANNON, J., concurs, COLLEEN MARY OTOOLE, J., dissents. *Page 1